OPINION OF THE COURT
 

 Bellacosa, J.
 

 The threshold issue is whether the Federal Airline Deregulation Act preempts appellants’ State discrimination claims against Delta Airlines. If not, this Court must decide whether Delta’s use of weight standards in hiring former Pan American Airways flight attendants constitutes discrete or interrelated disability, age, or sex discrimination. The Appellate Division, with two Justices dissenting in part, annulled the discrimination determination of the New York State Division of Human Rights, and then granted leave to the complainants. We now affirm.
 

 L
 

 After Pan Am’s bankruptcy declaration in the summer of 1991, it entered into an Asset Purchase Agreement with Delta, by which Delta acquired a substantial portion of Pan Am’s assets. Delta also agreed to hire approximately 6,000 Pan Am employees, predicated on specific criteria. These included seniority, language proficiency, personal interviews, and satisfaction of the least restrictive of the Delta or Pan Am small-to-medium weight standards referenced in Delta’s height/weight charts.
 

 The present dispute ultimately arrives at this Court as a result of Delta’s not hiring 10 former Pan Am employees. Notably, Delta interviewed more than 2,600 Pan Am flight attendants, made job offers to approximately 2,000, and ultimately hired approximately 1,800. The complainants-appellants are former Pan Am flight attendants and pursers with at least 14 years of experience at the time Pan Am ceased its operations. They filed individual administrative complaints against Delta with the State Division of Human Rights, alleging unlawful employment discrimination. Some alleged discrimination on the basis of age, sex or a perceived disability — weight—or a combination of these categories. Some also
 
 *70
 
 complained of discrimination on the basis of national origin, marital status, and race.
 

 Following investigations, an Administrative Law Judge (ALJ) determined that the complainants should be reinstated with back pay and damages for mental anguish and humiliation. In particular, the ALJ found (1) no Federal preemption; (2) discrimination of various kinds; (3) violations based on Delta’s preemployment physical examinations; (4) no bona fide occupational qualifications relating to Delta’s weight requirements and preemployment physical examinations; and (5) unlawful preemployment inquiries into applicants’ age, disability, marital status, gender, or national origin.
 

 An Executive Deputy Commissioner of the Human Rights Division sustained the gender discrimination complaints and claims of unlawful preemployment inquiry concerning national origin or sex or both, and dismissed all the remaining claims. The Commissioner adopted the award of back pay, but significantly reduced the proposed damages for mental anguish and humiliation.
 

 Delta and the complainants commenced cross CPLR article 78 proceedings in Supreme Court requesting respective relief. Upon transfer, the Appellate Division annulled the Division’s determination insofar as it sustained claims of discrimination on the basis of sex and improper inquiries into national origin or gender, or both (229 AD2d 132, 142). The court also held that the preemption doctrine did not apply
 
 (id.,
 
 at 138). For all practical and juridical purposes, it ruled against the complainants, dismissed their article 78 proceeding, and granted Delta’s petition, thus functionally nullifying the Division’s determination insofar as it was adverse to Delta
 
 (id.,
 
 at 142).
 

 The two dissenting Justices agreed with the majority that Federal law did not preempt State consideration of the discrimination claims, but urged that the discrimination claims on sex, age and disability grounds were supported by substantial evidence
 
 (id.,
 
 at 143).
 

 IL
 

 Delta, though it is not an appellant, argues that the State discrimination claims are preempted by the Federal Airline Deregulation Act of 1978. It thus urges affirmance of the Appellate Division order on that alternative, threshold ground. Appellants counter that their claims are not preempted because Congress intended only to restrict State regulation of
 
 *71
 
 airline fares, routes and services, not State regulation of employment practices.
 

 This Court only recently stated that "[t]he preemption question is ultimately one of congressional intent”
 
 (Guice v Schwab & Co.,
 
 89 NY2d 31, 39,
 
 cert denied
 
 520 US 1118). Specifically, "congressional preemptive intent may be shown from express language in the Federal statute; it may also be established implicitly because the Federal legislation is so comprehensive in its scope that it is inferable that Congress wished fully to occupy the field of its subject matter ('field preemption’), or because State law conflicts with the Federal law”
 
 (id.,
 
 at 39). Furthermore, "[ijmplied conflict preemption may be found when it is impossible for one to act in compliance with both the Federal and State laws, or when 'the state law * * * "stan[ds] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress” ’ ”
 
 (id.,
 
 at 39 [quoting
 
 Barnett Bank of Marion County v Nelson,
 
 517 US 25, 31]).
 

 Using
 
 Guice
 
 as a principal guidepost, we discern a particularized, subject-specific congressional intent within the Deregulation Act’s preemption provision. The provision expressly declares that "a State * * * may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation” (49 USC § 41713 [b]). The purpose of this provision, according to the United States Supreme Court, is "[t]o ensure that the States would not undo federal deregulation with regulation of their own * * * [by] prohibiting the States from enforcing any law 'relating to rates, routes, or services’ of any air carrier”
 
 (Morales v Trans World Airlines,
 
 504 US 374, 378-379).
 

 The Second Circuit Court of Appeals very recently applied the same provision, finding no preemption with respect to comparable age discrimination claims under the New York State Human Rights Law
 
 (see, Abdu-Brisson v Delta Air Lines,
 
 128 F3d 77). That case even arose out of the same Delta-Pan Am 1991 agreement and involved age discrimination claims by some former Pan Am pilots
 
 (id.,
 
 at 80).
 

 Interestingly, the Federal Court of Appeals cross-referenced and relied on the Appellate Division’s ruling in the instant case
 
 (id.,
 
 at 83;
 
 see,
 
 229 AD2d 132,
 
 supra).
 
 The Second Circuit concluded that Delta failed to establish that the New York Human Rights Law would frustrate the purposes of the Deregula
 
 *72
 
 tion Act (id., at 84). The court reasoned that "[permitting full operation of New York’s age discrimination law will not affect competition between airlines — the primary concern underlying the ADA”
 
 (id.,
 
 at 84). The court explained that "whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency”
 
 (id.,
 
 at 84). Finally, it stated that "the supposed state interference is too 'tenuous, remote or peripheral’ to justify the preemption of New York’s applicable laws”
 
 (id.,
 
 at 86;
 
 see, Morales v Trans World Airlines,
 
 504 US 374, 390,
 
 supra; see also, Shaw v Delta Air Lines,
 
 463 US 85, 100, n 21).
 

 We, thus, conclude that appellant’s claims are not preempted, agreeing with the Appellate Division’s analysis, as reinforced by the Second Circuit’s independent adoption and application in its case.
 

 m,
 

 A.
 

 Passing to the merits, we conclude that the Appellate Division properly rejected the various discrimination claims and grounds. We now address and analyze them based on the record presented here, as applied under the State Human Rights Law.
 

 We turn first in this regard to the claim that Delta’s weight requirements constitute disability discrimination. Executive Law § 296 (1) (a) provides that "[i]t shall be an unlawful discriminatory practice * * * [f]or an employer * * * because of the age, race, creed, color, national origin, sex, or
 
 disability,
 
 or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual” (emphasis added). Executive Law § 292 (21) defines the term "disability” as "a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.”
 

 Appellants failed to establish that they are medically impaired members of a protected class defined under the New York Human Rights Law. Nothing in the record supports the proposition that appellants suffer from a legally defined or cognizable "medical impairment” which restricts their "normal bodily function.” These claims, on this theory, therefore fail under Executive Law and record analysis.
 

 
 *73
 

 State Div. of Human Rights v Xerox Corp.
 
 (65 NY2d 213) is quite a distinct and legally distinguishable matter. There, the discrimination claim arose out of the allegation that Xerox refused to hire someone because of obesity
 
 (id.,
 
 at 215). The examining physician determined that the complainant, who was 5 feet 6 inches and weighed 249 pounds, suffered from a condition of " 'gross obesity’ ” (id., at 215-216). The Court held that "the Commissioner could find that the complainant’s obese condition itself, which was clinically diagnosed and found to render her medically unsuitable by the respondent’s own physician, constituted an impairment and therefore a disability within the contemplation of the statute”
 
 (id.,
 
 at 219;
 
 see also, Underwood v Trans World Airlines,
 
 710 F Supp 78, 83-84). Interpreting and applying the Executive Law to that particular record set of circumstances, the Court stated that "the statute covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future”
 
 (State Div. of Human Rights v Xerox Corp., supra,
 
 65 NY2d, at 219).
 

 The instant case is distinguishable from
 
 Xerox.
 
 The tendered "condition” here is not within the scope of the State Executive Law under these circumstances. Appellants did not proffer evidence or make a record establishing that they are medically incapable of meeting Delta’s weight requirements due to some cognizable medical condition. That was crucial in
 
 Xerox
 
 and is utterly absent here. We are satisfied that weight, in and of itself, does not constitute a disability for discrimination qualification purposes and the discrimination claims in that respect are, therefore, correctly unsustainable.
 

 B.
 

 Appellants also claim that Delta’s weight requirements constitute age and sex discrimination. Particularly, with regard to the age claim, they contend that Delta’s weight charts failed to make appropriate allowances for age. Appellants argue that Delta should be required to take into consideration that older people may generally tend to heavier weight development.
 

 Appellants fail to provide any evidence establishing disparate treatment of relatively older flight attendants. Indeed and ironically, Delta submitted substantial evidence that it relied heavily on seniority in employing former Pan Am flight attendants and that its flight attendants average over 40 years
 
 *74
 
 of age. We, therefore, agree that the age discrimination claims may not be sustained.
 

 The sex discrimination claims do not fare any better on this record. Appellants argue that the weight charts constitute sex discrimination because they permitted male applicants of a given height and age to weigh more than female applicants of the same height and age. That claim is entirely unsupportable and there is no basis to find as a matter of legal theory that weight limitations in these circumstances must be the same for both men and women.
 

 Moreover, Delta demonstrates that it utilized separate weight charts to ensure that males and females were treated relatively equally, based on real physiological differences. It shows that its standards recognize the statistically established norms that males tend to weigh more than females of the same height. There is no indication in the record that Delta’s hiring norms in this respect were applied unequally as between men and women, or that the standards were used as a pretext to deprive women of equal opportunity or treatment. Paradoxically, Delta submitted evidence that approximately 90% of its flight attendants are female, somewhat contradicting disparate impact from the employment practices complained of; evidently, the data show quite the opposite impact on the gender aspect of this case.
 

 C.
 

 Lastly, appellants challenge Delta’s preemployment inquiries and medical examinations. They specifically argue that Delta unlawfully asked preemployment questions regarding age, disabilities and physical impairments, family relations, marital status, roommates, and prior treatment for drug or alcohol abuse. We agree with the Appellate Division that the record does not support the contention that the interview inquiries by Delta’s representatives contributed to the eventual decision not to hire them. Merely establishing that a particular question was asked, even one that might be viewed as objectionable out of context or in the abstract, is insufficient, without some causal consequence or relevant relationship, to establish a claim for discrimination under the New York Human Rights Law in these circumstances.
 

 The State Executive Law declares unlawful the making of "any inquiry in connection with prospective employment, which expresses directly or indirectly, any limitation, specifica-
 

 
 *75
 
 tion or discrimination as to age, race, creed, color or national origin, sex, or disability or marital status, or any intent to make any such limitation” (Executive Law § 296 [1] [d]). The interview inquiries here are not actionable or sustainable because appellants fail to produce any evidence or suggest any inference that the subject inquiries reflected a " 'limitation, specification or discrimination’ ”
 
 (see, Matter of New York Times Co. v City of New York Commn. on Human Rights,
 
 41 NY2d 345, 349;
 
 see also, Alexander’s, Inc. v White,
 
 115 AD2d 424, 426).
 

 As to Delta’s preemployment physical examinations, suffice it to say that these routine examinations did not effect discriminatory hiring practices but were necessary, in part, to comply with FAA regulations.
 

 We have considered all the arguments and claims and agree with the Appellate Division that they are not preempted by the Federal Act and that they are not sustainable on the merits.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, with costs, and the certified question not answered upon the ground that it is unnecessary.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 Judgment affirmed, etc.