**Barbara SEGARRA, Plaintiff,**

v.

**RURAL OPPORTUNITIES, INC., Defendant.**

**No. 96 CIV. 5113 BDP.**

United States District Court, S.D. New York.

Jan. 13, 1998.

---

Jeffrey M. Bernbach, New York, NY, for Plaintiff.

Robert J. Kheel, Willkie, Farr & Gallagher, New York, NY, Thomas Fink, Davidson, Fink, Cook & Kelly, Rochester, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### BACKGROUND

Plaintiff Barbara Segarra brought suit against her former employer, defendant Rural Opportunities, Inc. ("ROI"), alleging that she was denied a position and ultimately discharged in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.;* the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.;* the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1) and (2); and the New York Human Rights Law, N.Y. Exec. Law, § 292 *et seq.* Defendant now moves for summary judgment. For the reasons stated below, defendant's motion is granted.

### FACTS

On a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988). The following facts are construed accordingly.

ROI is a New York not-for-profit corporation that provides job training and housing services to low and moderate income individuals. To aid in its efforts, defendant receives federal and state funding. Defendant's New

York operations are divided geographically into two regions.

Segarra was hired by ROI in February 1988, as the Deputy Director of Field Operations for Region II, which encompassed the mid-Hudson area and Long Island. Her title was later changed to Deputy of Field Operations. She remained in that position until her termination in February 1996. At the time of her termination, plaintiff was fifty-five years old and suffered from arthritis, fibromyalgia, and obesity.

In the summer of 1995, Velma Smith became the acting director of Program Operations for New York. She directly supervised plaintiff, who administered job training and supportive services in Region II. That year, defendant was notified that its federal and state funding would be reduced. Four individuals were laid off in Region II as a result. Plaintiff was not among the first round of layoffs.

After the initial layoffs, Smith determined that plaintiff's position would be eliminated as well. After consultation with Judy Jones, ROI's Deputy Director for Housing Administration, Smith and Jones decided to combine the two Deputy Director positions for Region II (Housing and Operations) into one. The new Deputy Director would serve both in the housing area and in the job training and supportive service area. ROI's management agreed to this change, with the understanding that applications for the new position would be both internally and externally solicited. At that time, the position of Deputy Director for Housing in Region II was vacant.

Three candidates applied for the new position, but one withdrew, leaving plaintiff and Rhetta Eason, a forty-five year old, non-disabled woman with a Master's degree. Eason had been serving as the administrator of the Section 8 housing program in Sullivan County, a position lower than plaintiff in ROI's organizational hierarchy. Both candidates submitted resumes and writing samples and were separately interviewed by a panel. In their interviews, each candidate was asked questions prepared by Smith and Jones. Each interviewer numerically scored the candidates' answers and recorded the scores on interview sheets. The panel then discussed the candidates. Smith, who was to directly supervise the new Deputy Director, had final approval over the decision.

Defendant contends that after the panel interviewed both candidates and compiled and averaged their scores, they determined that Eason had scored higher than plaintiff. While both candidates were deemed capable of the job, the panel believed that plaintiff's management style was less effective than Eason's. Specifically, plaintiff was viewed as having a tendency to micromanage, which the panel thought would render her less likely than Eason to permit her staff (or supervisees) to perform their job responsibilities. In addition, Eason had experience in housing, which Velma Smith lacked. This experience was considered important for the new Deputy Director position. As a result of the panel's interviews and reviews of the applicants, Eason was offered the position. Plaintiff was terminated shortly thereafter. The average age of ROI employees was 39, and the average age of the ROI employees who were terminated or laid off was also 39.

According to defendant, plaintiff was viewed as a competent, qualified employee, who had always performed satisfactorily. Plaintiff was never viewed as being unable to perform her position for any reason. While she appeared to need a cane to give her additional support, this requirement did not impair her work. Plaintiff never requested accommodation for her obesity, arthritis, or fibromyalgia. However, as a result of a sleeping problem, she requested, and was granted, a private room paid for by defendant when she attended conferences.

Plaintiff claims that she was more qualified than Eason for the new Deputy Director position and that defendant's stated reasons for offering Eason the position were false.[1] Plaintiff contends that she had worked for the defendant both longer than Eason, and at

---

1. In her deposition, for example, when asked why she thought that discrimination was involved in defendant's hiring Eason rather than

her, plaintiff stated: "Because the reason I was given as to why I was not hired, I believe, is a lie."

a higher level within defendant's hierarchy. Plaintiff also contends that she had handled greater responsibilities, had supervised more people, and had writing skills superior to Eason's.

In addition, plaintiff claims that the "micromanagement" critique of her work is simply not believable. She notes that the micromanagement criticism was common to both candidates, and in plaintiff's case was raised by Lynda Rogers–Seeley, whose entire working experience with plaintiff consisted of one two-hour meeting that both had attended. Plaintiff also argues that Seeley did not adequately support the micromanagement criticism when questioned in her deposition, and the other panelists actually scored plaintiff higher than Eason on the questions that Seeley identified as showing a tendency to micromanage. Further, the only member of the panel whom plaintiff had directly supervised considered her a good supervisor, thought that he had grown professionally under plaintiff's supervision, and made no mention of a tendency to micromanage in his unofficial performance evaluation of plaintiff.[2] Finally, plaintiff contends that no one at ROI had previously complained about her alleged tendency to micromanage.

Plaintiff further claims that when informing her of the panel's decision to hire Eason, Smith made an oblique reference to management style but offered no other justification for the decision. In addition, plaintiff contends that Smith did not mention that plaintiff's limited housing experience contributed to the panel's decision. These facts, plaintiff contends, show that defendant's proffered reasons for hiring Eason rather than her were false.

## DISCUSSION

In order to prevail in a lawsuit brought under the ADA and the Rehabilitation Act, the plaintiff must first establish a *prima facie* case. To establish a *prima facie* case the plaintiff must show:

(1) that she is a handicapped person under the disability acts; (2) that she is otherwise qualified to perform her job; (3) that she was discharged because of her handicap; and, with respect to Rehabilitation Act claims; (4) that the employer is a recipient of Federal financial assistance.

*Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 383 (2d Cir.1996) (citing *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994)). In order to show that she is handicapped, the plaintiff must demonstrate (1) that she has a physical or mental impairment; and (2) that her impairment substantially limits one or more of her major life activities. *Id.*

Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to offer rebuttal evidence showing a legitimate, nondiscriminatory reason for the adverse action. If the defendant is successful, the presumption raised by the *prima facie* case is rebutted and drops from the case. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The plaintiff must then show "that the proffered reason was not the true reason for the employment decision," and that plaintiff's disability was a motivating factor. *Id.* 509 U.S. at 506–507.

The analysis under the ADEA is similar. To prevail under the ADEA, the plaintiff must first establish a *prima facie* case, which the defendant must rebut. To do this, the plaintiff must show:

(1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination.

*Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994) (quoting *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1155 (2d Cir. 1993)). If the defendant successfully rebuts

---

**2.** In a subsequent affidavit, this panel member, Willie Dave Hearn, states that because he was evaluating plaintiff on an unofficial basis and providing his comments directly to her, he was uncomfortable voicing any substantial criticism of plaintiff, who was responsible for evaluating and directly supervising him.

the *prima facie* case, the plaintiff bears the burden of showing that age was more likely than not the true reason for the plaintiff's discharge. *Woroski v. Nashua Corp.*, 31 F.3d at 108. To withstand a motion for summary judgment, the plaintiff must produce sufficient evidence to support a rational finding not only that the legitimate, nondiscriminatory reasons proffered by the employer were false, but that more likely than not the employee's age was the true reason for the discharge. *Id.* at 110 (citing *St. Mary's Honor Center v. Hicks, supra*); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 64 (2d Cir.1997).

▇ The same burden shifting analysis applies for age and disability discrimination under the Executive Law of New York. *See Laverack & Haines v. New York State Div. Of Human Rights*, 88 N.Y.2d 734, 650 N.Y.S.2d 76, 673 N.E.2d 586 (1996); *Delta Air Lines, Inc. v. New York State Division of Human Rights*, 229 A.D.2d 132, 652 N.Y.S.2d 253 (1st Dept.1996), *aff'd*, 689 N.E.2d 898, 666 N.Y.S.2d 1004, 91 N.Y.2d 65 (1997).

▇ While defendant contends that plaintiff is not disabled under either federal or state law, and therefore cannot make out even a *prima facie* case of discrimination, this Court need not decide that issue. In this case, assuming, *arguendo*, that plaintiff has made out a *prima facie* case for both age and disability discrimination under federal and state law,[3] defendant has stated that Eason was given the new Deputy Director position over plaintiff because the panel found her management style better suited to the job and because she had housing experience, which plaintiff did not. Defendant thus has set forth legitimate nondiscriminatory explanations for its ultimate discharge of plaintiff sufficient to rebut plaintiff's *prima facie* case. As a result, plaintiff must show

that defendant's proffered explanations for its actions are pretextual; that is, plaintiff must show both that the employer's stated reasons for discharge were false, *and* that discrimination, more likely than not, was a real reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. at 515; *Raskin v. Wyatt Co., supra*, 125 F.3d at 64; *Ferrante v. American Lung Assoc.*, 90 N.Y.2d 623, 687 N.E.2d 1308, 665 N.Y.S.2d 25 (1997). This the plaintiff has failed to do.

Plaintiff relies on *St. Mary's Honor Center v. Hicks, supra*, and *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir.1994), to assert that a showing that the defendant's proffered reasons may be false together with the elements of her *prima facie* case may, with no further proof, suffice to show intentional discrimination. As a result, plaintiff offers no additional evidence to prove discrimination, devoting her attention solely to showing that defendant's proffered reasons for discharge were false. Plaintiff's only "evidence" of age or disability discrimination, therefore, is that Eason was younger than she and not disabled. In fact, plaintiff fails to cite to a shred of evidence indicating that discrimination on the basis of either her age or her disability was a reason that she did not become the new Deputy Director.[4] This is fatal to plaintiff's claim.

▇ Indeed, plaintiff reads too much into *St. Mary's Honor Center* and *Cabrera*. While it is true that the *prima facie* case, together with a rejection of the defendant's proffered reasons for its actions may suffice to show intentional discrimination, such a finding is by no means automatic. *Stern v. Trustees of Columbia University in the City of New York*, 131 F.3d 305 (2d Cir.1997); *Fisher v. Vassar College*, 114 F.3d 1332, 1338 (2d Cir.1997) (en banc). Here, assuming that plaintiff succeeded in making out a *prima*

---

**3.** Assuming, *arguendo*, that plaintiff is disabled under both federal and state law, there is no dispute that plaintiff was qualified for the position in question or that plaintiff was discharged. There is also no dispute that ROI received federal funding. The final element of the *prima facie* cases for age and disability discrimination is satisfied by defendant's selection of Eason, who was younger than plaintiff and not disabled.

**4.** In her deposition, plaintiff did state that Stuart Mitchell, the Chief Executive Officer of ROI, had several years before told her in a telephone conversation that he was concerned about her weight, and had given her a "strange look" at a meeting several months before she left ROI. Mitchell, however, was not involved in deciding which candidate to hire for the new Deputy Director position.

**328**

*facie* case, her evidence showing an inference of discrimination was speculative, amounting only to stating that because plaintiff did not think defendant's criticisms about her management style were true, defendant must have been lying, and that Eason was younger than plaintiff and not disabled. Further, other than claiming that this reason was not previously mentioned, plaintiff fails to challenge in any way defendant's assertion that housing experience—which Eason had but plaintiff lacked—was important in determining which candidate ultimately got the new Deputy Director position. In addition, the fact that plaintiff scored higher than Eason on the questions Seeley identified as indicating micromanagement does not show that the micromanagement criticism was false; to the contrary, Seeley's personal identification of such questions as indicating micromanagement proves nothing. And even if Seeley's support of her micromanagement critique of plaintiff was inadequate, it does not suggest that the panel preferred Eason to plaintiff because of plaintiff's age or disability. In short, plaintiff simply provides no evidence of bias against her on account of her age or alleged disabilities.

### CONCLUSION

While this Court is mindful of the need for caution in granting summary judgment where an individual's intent and state of mind are implicated, *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219 (2d Cir.1994), plaintiff cannot withstand a motion for summary judgment on the grounds she sets forth. Accordingly, defendant's motion for summary judgment is granted. In view of the dismissal of plaintiff's federal claims, this Court declines to entertain her state claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The clerk of the court is directed to enter judgment for the defendant.

**SO ORDERED.**