[794 NYS2d 327]

HYUNDAI CORPORATION et al., Respondents, v THE REPUBLIC OF IRAQ et al., Defendants, and THE CENTRAL BANK OF IRAQ, Appellant.

First Department, April 28, 2005

### APPEARANCES OF COUNSEL

*Sinnreich Safar & Kosakoff LLP*, Central Islip (*Jonathan Sinnreich* of counsel), for appellant.

*Bingham McCutchen LLP*, New York City (*Mark M. Elliott, Jared R. Clark* and *Joshua Dorchak* of counsel), for respondents.

### OPINION OF THE COURT

MARLOW, J.

We are asked on this appeal to decide whether the doctrine of federal preemption applies to a motion to vacate a default judgment where movant is a foreign sovereignty. In this appeal, plaintiff caused a default judgment to be entered against defendant Central Bank of Iraq pursuant to the Foreign Sovereign Immunities Act (28 USC § 1602 *et seq.*), which is the mandatory procedural vehicle to obtain a default judgment against a foreign sovereignty in either state or federal court. In this case, defendant Bank argues that the more liberal federal rules of procedure for vacating a default judgment should preempt the more restrictive New York state procedural statute (CPLR 5015) even in the context of this state court proceeding. We disagree and therefore affirm the order which, based on CPLR 5015, denied defendant Bank's motion to vacate the default judgment.

In December 1997, plaintiffs commenced this breach of contract action against defendants in Supreme Court, New York County. Plaintiffs served the complaint under the Foreign Sovereign Immunities Act (28 USC § 1608). Defendant Central Bank of Iraq received the complaint in April 1998. Thereafter, as settlement talks were ongoing, plaintiffs granted the Bank several extensions of time to answer or otherwise move. Negotiations continued long past the deadline for serving an answer. On August 27, 1999, plaintiffs moved for a default judgment.

Although the Bank received notice of the motion on September 7, 1999, it failed to respond. On November 3, 1999, the Bank received notice of settlement of plaintiffs' proposed default order. Again, the Bank remained silent. On December 13, 1999, plaintiffs entered a default judgment against defendants. Pursuant to the Foreign Sovereign Immunities Act, plaintiffs delivered a copy of the default judgment with notice of entry to the County Clerk and Clerk of the Supreme Court. The Clerk mailed a copy of the judgment with notice of entry to the Bank on January 10, 2000.

After plaintiffs caused the entry of the default judgment in state court, the Bank continued to proceed in state court by moving to vacate the judgment pursuant to CPLR 5015 (a) (1). After Supreme Court denied its motion on November 26, 2001, the Bank filed the instant appeal, while simultaneously moving to reargue and renew the motion for vacatur in state court. In September 2002, amid this flurry of state court activity, the Bank also sought to remove the state court action to federal court. Plaintiffs moved to remand the matter to state court.

In granting plaintiffs' remand motion, the District Court observed that the Bank's removal efforts were 4½ years too late.[1] Because of the inordinate delay, the Bank had to demonstrate " 'the outermost limits of good cause' " (*see Hyundai Corp. v Republic of Iraq*, 2003 WL 22251349, *2, 2003 US Dist LEXIS 17206, *4 [US Dist Ct, SD NY, Casey, J., Sept. 30, 2003, No. 02 Civ 7199 (RCC)] [citations omitted]). The District Court found that "[t]he extent of prior state court proceedings weighs heavily in a determination of whether a delay in removal is justified" (2003 WL 22251349, *2, 2003 US Dist LEXIS 17206, *6). Citing the extensive procedural history of the case in state court and rejecting the Bank's excuse for its entire delay, i.e., the recent events of September 11, 2001 and its aftermath, the court concluded that the Bank was forum shopping. The court further concluded that giving the Bank a "second bite at the apple" in federal court (2003 WL 22251349, *3, 2003 US Dist LEXIS 17206, *8, quoting *Boland v Bank Sepah-Iran,* 614 F Supp 1166, 1170 n 5 [1985]) would prejudice plaintiff. Accordingly, the District Court held that the Bank had "taken [its] chances in state court, [and could not] now remove the case

---

1. Notice of removal of an action must be filed within 30 days after receipt by the defendant of a copy of the initial pleading (28 USC § 1446 [b]). Where the defendant is a foreign state, the time limitations for removal may be enlarged at any time "for cause shown" (28 USC § 1441 [d]).

because it would be advantageous to do so" (*Hyundai Corp.,* 2003 WL 22251349, \*3, 2003 US Dist LEXIS 17206, \*7-8).

Its removal efforts having failed, the Bank now argues for the first time[2] that CPLR 5015 is preempted by 28 USC § 1608 (e) and that its motion to vacate the default judgment is therefore governed by the more liberal Federal Rules of Civil Procedure. Initially, we note that the Bank affirmatively moved to vacate a default judgment solely based on New York law. Consequently, the position the Bank now advances on appeal—that the state statute governing relief from judgments is preempted by federal law—is inherently contradictory to the initial stance it chose to take before the motion court.

■ Therefore, the Bank, having charted its own procedural course by wending its way through the state court and having failed to seek removal for over four years, cannot now be heard to complain that its motion to vacate the default judgment, which it affirmatively made pursuant only to state statute, was not decided on the basis of the more liberal Federal Rules of Civil Procedure (*see e.g. Al Malki v Krieger,* 213 AD2d 331, 334-335 [1995]; *Matter of Herskovitz [L.B. Kaye Assoc.],* 170 AD2d 272 [1991], *lv dismissed* 78 NY2d 899 [1991]; *Matter of Prudential Prop. & Cas. Ins. Co. v Green,* 146 AD2d 699, 701 [1989]; *see also Matter of Bridge & Tunnel Officers Benevolent Assn. v Ravitch,* 105 Misc 2d 924, 926 [1980] ["(h)aving chosen to chart their own procedural course, respondents cannot now be heard to complain that the destination to which it has led them is not to their liking"]). Such self-contradictory advocacy— which is, at best, disorderly if not disingenuous—should not be tolerated, especially after over five years of multipronged litigation in state and federal courts.

In any event, a finding that a federal statute or regulation preempts state law "is not favored" (*Matter of Brenner [Nomura Sec. Intl.],* 228 AD2d 67, 70 [1996], *lv dismissed* 90 NY2d 921 [1997]; *accord Rollin v Wm. V. Frankel & Co., Inc.,* 290 AD2d 368, 369 [2002]; *see also Zuri-Invest AG v Natwest Fin. Inc.,* 177 F Supp 2d 189, 191-192 [2001] [presumption exists against preemption]). Indeed, the situations in which the federal preemption doctrine applies are extremely limited. Federal

---

2. Apparently, the Bank belatedly referred to its present preemption claim when it moved in Supreme Court to reargue the order presently under review. However, that motion is not before us on this appeal, and, in any event, would be unavailing if it were, because a newly asserted legal argument is not a proper ground for reargument (*see* CPLR 2221).

preemption can only occur where Congress explicitly preempts state law, where preemption is implied because Congress has occupied the entire field, and where preemption is implied because there is an actual conflict between federal and state law (*see Schneidewind v ANR Pipeline Co.*, 485 US 293, 299-300 [1988]; *Matter of Delta Air Lines v New York State Div. of Human Rights*, 91 NY2d 65, 71 [1997]).

First, express preemption does not apply here. The federal statute on which the Bank relies prohibits entry of a default judgment against a foreign state or its instrumentality "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court" (28 USC § 1608 [e]). By definition, this statute involves only the *entry* of default judgments against foreign states and their instrumentalities, not the *vacatur* of default judgments. If Congress intended to give foreign states special treatment with respect to vacating default judgments, it clearly could and therefore would have said so (*see Dadesho v Government of Iraq*, 139 F3d 766, 767 [1998] ["Congress knows how to provide specific safeguards when it wants to"]).

Second, there are few statutes which "possess the 'extraordinary pre-emptive power' required to occupy a field of law so entirely as to characterize any claims arising thereunder as federal" (*Zuri-Invest*, 177 F Supp 2d at 195, quoting *Metropolitan Life Ins. Co. v Taylor*, 481 US 58, 65 [1987]). The Foreign Sovereign Immunities Act (28 USC § 1602 *et seq.*), in the main, sets forth the extent of foreign state immunity from suit, how foreign states are to be served, how long they have to answer, and the above requirement in section 1608 (e) that satisfactory evidence must be presented as a condition to the entry of a default judgment. This act is not so comprehensive in scope as to permit an inference of Congressional intent to preempt CPLR 5015, a procedural statute of general applicability that affects American and foreign state litigants in precisely the same way. Indeed, the Act itself provides that for any claim where a foreign state is not entitled to immunity, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," except for punitive damages (28 USC § 1606).

The dissent contends that conflict preemption applies. However, under this type of implied preemption, state law will be preempted "if it is impossible to comply with both the local and Federal law, or the State or local law stands as an obstacle to the accomplishment of the full purposes and objectives of

Congress" (*City of New York v Job-Lot Pushcart*, 88 NY2d 163, 170 [1996] [citations omitted], *cert denied sub nom. JA-RU v City of New York*, 519 US 871 [1996]; *accord Delta Air Lines, supra*, 91 NY2d at 71). It is not impossible for a party to comply with both the Foreign Sovereign Immunities Act (FSIA) and the CPLR. By definition, one applies to *entry* of default judgments (28 USC § 1608 [e]) and the other applies to *vacatur* of default judgments (CPLR 5015), two distinct procedural avenues each based on very different policy considerations.

Nor can it be said the state statute governing relief from judgments or orders is an obstacle to the objectives of Congress. Indeed, Congress made clear that uniformity in decisions of cases involving foreign governments, while desirable, is to be achieved not by preemption but by special provisions allowing for more generous removal to federal court (*see* HR Rep No. 94-1487, 94th Cong, 2d Sess, at 13, 32; *see also Verlinden B. V. v Central Bank of Nigeria*, 461 US 480, 489 [1983]). Thus, if defendant Bank wished the action to be governed by the Federal Rules of Civil Procedure instead of the CPLR, it undoubtedly should not have waited over four years to seek removal (*see Hyundai Corp. v Republic of Iraq, supra*).

While not controlling, we believe it is relevant to note that in granting plaintiffs' motion in the federal action to remand the action to state court, the District Court observed that "the circumstances in this case indicate an attempt by [the Bank] to evade a default judgment in state court" (2003 WL 22251349, *3, 2003 US Dist LEXIS 17206, *7). Moreover, had Congress intended that all suits against foreign sovereigns be governed by federal law, it could have just as easily granted the federal courts exclusive jurisdiction to hear such cases. However, it did not do so. Indeed, the FSIA "clearly contemplates" that suits against foreign sovereigns "may be brought in either federal or state courts" (*Verlinden*, 461 US at 489).

The dissent maintains that the standard to be applied to vacating a default taken against a foreign sovereign should be the same as would apply were the movant the United States government. However, even if special rules exist for motions to vacate default judgments against the Unites States, there is "no basis for extending to foreign governments all the procedural protections our laws accord our own government" (*Dadesho*, 139 F3d at 767). In any event, had Congress intended to make all foreign sovereigns subject to federal law, it could have, and it would have said so.

Our dissenting colleague also expresses concern that our ruling today "[f]orc[es] foreign sovereigns to navigate a maze of state procedural rules" leaving "the possibility that foreign sovereigns involved in legal disputes will be disinclined to litigate in our state courts."

We see the effect of our holding quite differently. We believe today's ruling, which respects the clear and unambiguous language Congress chose in drafting section 1608 (e), lends stability and predictability to New York's body of procedural law. This follows, not by virtue of our holding, but as the result of clear statutory language which limits section 1608 (e)'s applicability to the entry, not the vacatur, of a default judgment against a foreign sovereign. Fostering such a legal environment enables our state's many competent attorneys, who daily shepherd complex lawsuits through our commercial and other courts, to give reliable advice to their foreign sovereign clients in how best to chart their procedural course in cases involving this statute. It also gives the same assurances to lawyers for domestic companies who are retained to guide their clients in matters involving foreign sovereigns. That result, we submit, is superior to causing lawyers and litigants to spend time and money unnecessarily trying to forecast or divine which interpretation du jour, beyond a statute's actual words, their appellate judges will select as more palatable.

■ Since the Bank failed to establish that federal preemption applies, we now turn to the question whether Supreme Court properly denied the Bank's motion to vacate the default judgment which was brought solely pursuant to state statute. CPLR 5015 (a) (1) provides that a party may move for relief from a judgment or order for "excusable default" if the motion is made within one year after service of a copy of the order or judgment with notice of entry. In order to establish excusable default, the defaulting party "must demonstrate both a meritorious defense and a reasonable excuse for the default" (*Achampong v Weigelt*, 240 AD2d 247, 248 [1997]). Although not dispositive, we observe that in this action, where the Bank has created considerable and undue delay on several fronts before seeking various forms of relief, it waited until the eve of the expiration of the one-year time limit before it moved to vacate its default. A court's discretion to relieve a party from a default judgment should not be favorably exercised where, as here, the party has been dilatory in asserting its rights (*see Greenwich Sav. Bank v JAJ Carpet Mart, Inc.*, 126 AD2d 451, 452 [1987]).

In any event, we find that the Bank otherwise failed to demonstrate a reasonable excuse for its failure to serve a timely answer, and therefore affirm the order on appeal. The Bank received the complaint in April 1998, and, by reason of extensions allowed by plaintiffs, its time to answer expired in November 1998. Thereafter, the Bank admittedly received notice of plaintiffs' motion for a default judgment in September 1999 and of their notice of settlement of the default order in November 1999, but still did not appear. Plaintiffs entered the default judgment in December 1999, and promptly served a copy with notice of entry. The Bank then waited until January 2001, when it was almost time-barred, to move to vacate the judgment.

While it appears the parties were at various times engaged in settlement discussions before and during the pendency of the action, nothing in the record supports the Bank's claim that those discussions gave it reason to believe plaintiffs would not pursue the default unless and until they gave it notice of a new deadline for answering (*see e.g. United Indus. Corp. v Shreiber*, 51 AD2d 688, 689 [1976], *lv dismissed* 39 NY2d 711, 1015 [1976], *cert denied* 429 US 1023 [1976]). Indeed, the major part of the Bank's lengthy default, stretching from November 1998 to January 2001 (*compare e.g. Classie v Stratton Oakmont, Inc.*, 236 AD2d 505 [1997]; *Scielzi v Gold*, 213 AD2d 872, 873 [1995]), occurred after plaintiffs moved, on notice, for a default judgment in August 1999 and entered it in December 1999 (*compare e.g. Koren-DiResta Constr. Co. v CNA Ins. Cos.*, 176 AD2d 567, 568 [1991]). It also appears that the settlement discussions, if they were at all genuine, became considerably less active and frequent after plaintiffs moved for the default judgment.

The Bank's total failure to show any reasonable excuse makes it unnecessary to consider whether it has a meritorious defense (*see Time Warner City Cable v Tri State Auto*, 5 AD3d 153 [2004], *lv dismissed* 3 NY3d 656 [2004]). Consequently, Supreme Court properly exercised its discretion in denying the Bank's motion to vacate its default (*id.*).

Accordingly, the order of the Supreme Court, New York County (Charles Edward Ramos, J.), entered November 30, 2001, which denied defendant-appellant Central Bank of Iraq's motion to vacate a default judgment, should be affirmed, without costs.

SAXE, J.P. (dissenting). It was error to deny the motion to

vacate the default taken against the Central Bank of Iraq (CBI) on its guarantees of loans issued by plaintiff Hyundai Corporation, on the reasoning that CBI had failed to demonstrate a reasonable excuse for the failure to respond.

In litigation against a foreign state or its agents or instrumentalities, such as defendant Central Bank of Iraq, the Foreign Sovereign Immunities Act (FSIA) (28 USC § 1602 *et seq.*) controls whether the action is litigated in a state or a federal court. Inasmuch as the FSIA imposes stricter-than-usual limits on a plaintiff seeking a default judgment against a foreign state (*see* 28 USC § 1608 [e]), I would hold that even though the FSIA lacks a specific provision regarding the vacatur of defaults against a foreign sovereign, the policy behind section 1608 (e) and the FSIA generally requires that foreign sovereigns seeking to vacate defaults against them must satisfy only the requirements of federal law, rather than the strict procedural requirements of our state law under CPLR 5015.

## FACTS

On October 8, 1984, Hyundai Corporation agreed to lend defendant Electrical Projects Company (EPC), then known as the State Organization of Electricity of the Ministry of Industry and Minerals of the Republic of Iraq, over $100 million for the construction of the Al Mussaib Thermal Power Station (the Almus Agreement). The loan was made and EPC executed a series of promissory notes, which defendant CBI guaranteed.

Since August 1990, in the wake of UN-imposed sanctions on Iraq following its invasion of Kuwait, no payments have been made to Hyundai, nor has CBI made any payment under its guarantees. Ongoing discussions continued, however, as to the calculation of the amounts owed and the need to await the lifting of sanctions before payments could be made.

On December 2, 1997, plaintiffs brought the instant lawsuit against Iraq, EPC and CBI, seeking $66,254,966.95 plus prejudgment interest under the Almus Agreement, the promissory notes and the guarantees. The complaint was properly served under the Foreign Sovereign Immunities Act (28 USC § 1608). CBI received the complaint in April 1998.

Defendants obtained three extensions of their time to answer; that time finally expired on November 20, 1998 without service of an answer. On August 27, 1999, plaintiffs moved for a default judgment. CBI received notice of the motion on September 7, 1999 but did not respond. On December 13, 1999, a default

judgment in the amount of $70,184,580 was entered against defendants.

CBI then made the underlying motion to vacate the default judgment and to dismiss the action pursuant to CPLR 3211 based on the statute of limitations. The motion court denied CBI's motion, remarking that although the statute of limitations defense "may be meritorious," CBI lacked a reasonable excuse for its failure to answer the complaint, as is required by CPLR 5015 to vacate a default judgment. I would reverse and direct the motion court to determine the merits of the motion to dismiss, irrespective of the existence of a reasonable excuse.

## DISCUSSION

The federal Foreign Sovereign Immunities Act (28 USC § 1602 *et seq.*) is controlling when litigation is brought against a foreign state or its agents or instrumentalities, such as defendant Central Bank of Iraq. This is so regardless of whether the action is litigated in a state or a federal court. In particular, FSIA § 1608 (e) controls the entry of default judgments against an agency or instrumentality of a foreign state, providing that: "No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." The provision was modeled after rule 55 (e) of the Federal Rules of Civil Procedure, with the intention of "provid[ing] foreign sovereigns with the same protection from default judgments that the [United States] government enjoys" (*see Commercial Bank of Kuwait v Rafidain Bank*, 15 F3d 238, 242 [1994]; *see also Compania Interamericana Export-Import, S.A. v Compania Dominicana de Aviacion*, 88 F3d 948 [1996]). Therefore, when considering an application by a foreign sovereign to vacate a default taken against it, the standard which ought to be applied is that which would be applicable if the movant were the United States government.

When default judgments are entered against the United States government, applications to vacate the default are routinely granted wherever a meritorious defense is demonstrated, without regard to the reasons for the default.

"Mere failure on the part of the United States to answer a complaint is no ground for entry of judg-

ment against it. 'When the government's default is due to a failure to plead . . . the court typically either will refuse to enter a default or, if a default is entered it will be set aside.' C. Wright & A. Miller, *Federal Practice and Procedure* § 2702 (2d Ed.1983). The rationale for Rule 55 (e) lies in the fact that it is ultimately the public which bears the cost of the default judgment entered against the Government. The public should not be made to shoulder the burden of a windfall judgment that befalls the Government's adversary." (*Atkins v United States*, 1990 WL 126196, \*2, 1990 US Dist LEXIS 11310, \*6-7 [US Dist Ct, D NJ, Wolin, J., Aug. 27, 1990] [citations omitted].)

Therefore, under the FSIA, as long as the foreign sovereign successfully demonstrates a meritorious defense, courts deny entry of a default judgment or set aside any default that was already entered (*see e.g. Practical Concepts, Inc. v Republic of Bolivia*, 811 F2d 1543 [1987]; *Carl Marks & Co., Inc. v Union of Soviet Socialist Republics*, 665 F Supp 323 [SD NY 1987], *affd* 841 F2d 26 [1988], *cert denied* 487 US 1219 [1988]; *Walpex Trading Co. v Yacimientos Petroliferos Fiscales Bolivianos*, 109 FRD 692 [SD NY 1986]; *Jackson v People's Republic of China*, 794 F2d 1490 [11th Cir 1986], *cert denied* 480 US 917 [1987]).

Indeed, even though federal law holds that the question of whether the default was willful is one of the factors to consider in deciding whether to set it aside (*see National Bank of Kuwait, S.A.K. v Rafidain Bank*, 1994 WL 376037, \*2, 1994 US Dist LEXIS 9817, \*4-5 [US Dist Ct, SD NY, Patterson, J., July 19, 1994, No. 93 Civ 3324 (RPP)], citing *Meehan v Snow*, 652 F2d 274, 277 [2d Cir 1981] and *Traguth v Zuck*, 710 F2d 90, 94 [2d Cir 1983]), a finding of willfulness is virtually irrelevant where a meritorious defense is established, since "[a] default judgment is not appropriate if there exist meritorious defenses to the claims asserted" (*see National Bank of Kuwait, S.A.K. v Rafidain Bank*, 1994 WL 376037, \*3, 1994 US Dist LEXIS 9817, \*8, citing *Wagstaff-EL v Carlton Press Co.*, 913 F2d 56, 57 [2d Cir 1990], *cert denied* 499 US 929 [1991] and *Securities & Exch. Commn. v Hasho*, 134 FRD 74, 77 [SD NY 1991]).

This liberal policy of vacating defaults against foreign states is explained by then-Circuit Judge Ginsburg in *Practical Concepts, Inc. v Republic of Bolivia*:

"[I]t is in the interest of United States' foreign

policy to encourage foreign states to appear before our courts in cases brought under the FSIA. When a defendant foreign state has appeared and asserts legal defenses, *albeit after a default judgment has been entered,* it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments." (811 F2d at 1551-1552 [emphasis added].)

Essentially, federal policy requires that "when the government is a party to litigation, substance should trump procedure" (*Stewart v United States Postal Serv.,* 649 F Supp 1531, 1535 [SD NY 1986]).

Despite these clear expressions of strong federal policy requiring courts to address the merits of legal claims against foreign governmental entities even after a default has been entered against them, this Court now holds that the merits of such a dispute need not be addressed where the foreign sovereign fails to satisfy our state procedural requirement that a litigant seeking to vacate a default demonstrate a "reasonable excuse" for the failure to respond (*see* CPLR 5015). The majority particularly relies upon the lack of any provision in the FSIA defining the standard for vacating a default granted under the Act.

It is true that while 28 USC § 1608 (e) explicitly preempts state law concerning the *entry* of a default judgment against a foreign sovereign, it says nothing about preempting state law regarding *vacatur* of a default judgment. Yet, "[i]mplied conflict preemption may be found . . . when the state law . . . stan[ds] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Matter of Delta Air Lines v New York State Div. of Human Rights,* 91 NY2d 65, 71 [1997] [internal quotation marks omitted], quoting *Guice v Charles Schwab & Co.,* 89 NY2d 31, 39 [1996], *cert denied* 520 US 1118 [1997], quoting *Barnett Bank of Marion Cty., N.A. v Nelson,* 517 US 25, 31 [1996]).

The federal courts have clearly enunciated a federal policy of ensuring that foreign states are provided with the same protections against default judgments as those applicable to the United States government, irrespective of a failure to timely oppose them. Given the policy concern so clearly articulated by Justice Ginsburg in *Practical Concepts,* encouraging the consideration of all relevant legal arguments in actions falling under the FSIA, even after a default judgment was entered, which policy has been carried out in a wide array of cases, it would make no

sense to impose a uniform body of federal law to protect foreign sovereigns against the *entry* of default judgments, but leave it up to the states to undermine that policy by applying differing and potentially more restrictive standards to the vacatur of those same default judgments. We should recognize that enforcing our state procedural rule, which only permits vacating a default if a showing of a reasonable excuse has been made (CPLR 5015), is completely contrary to this federal policy regarding the treatment of defaults against foreign governments.

Moreover, if defaults against foreign sovereigns are to be treated identically to defaults taken against the United States government, we cannot permit different results to ensue depending upon whether the default is obtained in a state court or a federal court.

New York City serves as a mecca of international commerce in this global economy, with foreign sovereigns frequently acting as direct parties to that commerce. Indeed, our state court system has created commercial courts to knowledgeably handle specialized commercial litigation, including that which involves foreign sovereigns. Forcing foreign sovereigns to navigate a maze of state procedural rules, when their litigation is otherwise controlled by federal statute and related case law which establishes an overarching approach to dealing with such litigation, constitutes an ill-advised provincial approach to an issue that has national and international concerns. It also creates the possibility that foreign sovereigns involved in legal disputes will be disinclined to litigate in our state courts.

The majority blithely suggests that its ruling lends stability and predictability to New York's law. However, this assertion is nothing but a tautology: *any* ruling of the majority would, by definition, lend stability to the law. Indeed, were the view of this dissent adopted as the majority ruling, it would create the same degree of stability for future litigants. Nor may the majority properly claim to be offering "stability" by providing a reading of the clear language of the statute. Both the majority's reasoning and that expressed in this dissent offer an *interpretation* of the intent of the FSIA insofar as it expressly sets out rules for obtaining a default judgment against a foreign sovereign but says nothing about vacating such defaults. As to the majority's implication that the ruling we suggest would constitute a capricious "interpretation du jour," on the contrary, the holding we propose would create a consistent application of federal law to

litigation under the FSIA, rather than promoting an unpredictable application of some state procedural rules in a context otherwise covered by federal law.

Our state procedural requirement should be put aside here, in favor of the protections afforded the United States government in federal court, which rejects procedural requirements regarding justifications for defaulting, in favor of ensuring that claims against the government are decided on the merits whenever a potentially meritorious defense is demonstrated.

Nor should CBI be held to a different standard simply because, having spent years trying to settle the claim, it failed to remove the case to federal court.

Accordingly, I would remit this matter to the motion court for a determination of merits of the statute of limitations defense.

SULLIVAN and NARDELLI, JJ., concur with MARLOW, J.; SAXE, J.P., and CATTERSON, J., dissent in a separate opinion by SAXE, J.P.

Order, Supreme Court, New York County, entered November 30, 2001, affirmed, without costs.