06-5914-cv
Spiegel v. Schulmann

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: May 7, 2008                      Decided: May 6, 2010)

Docket No. 06-5914-cv

_____

ELLIOT SPIEGEL, JONATHAN SCHATZBERG,

*Plaintiffs-Appellants,*

*-v.-*

DANIEL ("TIGER") SCHULMANN, UAK MANAGEMENT COMPANY, INC.,

*Defendants-Appellees.*

_____

BEFORE:  HALL and LIVINGSTON, *Circuit Judges.*[*]

For Plaintiffs-Appellants:  Eric J. Grannis, Law Offices of Eric J. Grannis, New York, New York.

For Defendants-Appellees:  Scott Levenson, Elmwood Park, New Jersey.

Appeal from a judgment by the United States District Court for the Eastern District of New York (Townes, *J.*)

---

[*]    Judge Louis F. Oberdorfer of the United States District Court for the District of Columbia, originally a member of the panel sitting by designation, recused himself after oral argument. The two remaining members of the panel, who are in agreement, have decided this case in accordance with Second Circuit Internal Operating Procedure E(b).

granting the Defendants-Appellees' motion for summary judgment.  Because we hold that the district court properly concluded that there is no individual liability for retaliation claims brought under the Americans with Disabilities Act ("ADA"), we affirm the court's granting of the motion for summary judgment with respect to the ADA retaliation claims against Defendant-Appellee Daniel ("Tiger") Schulmann.  Further, we also hold that the court correctly determined that the Plaintiffs failed to state a claim under the New York State Human Rights Law. However, we vacate and remand with respect to the Plaintiffs' claim under the New York City Human Rights Law.  We find the Plaintiffs' remaining bases for appeal to be without merit.  Accordingly, we affirm in part and vacate in part the judgment of the district court, and remand.

PER CURIAM:

Elliot Spiegel and Jonathan Schatzberg (collectively, "Plaintiffs") appeal from the November 30, 2006, judgment of the district court awarding summary judgment to Defendants-Appellees Daniel "Tiger" Schulmann and UAK Management

2

Company, Inc. ("UAK") (collectively, "Defendants"), and dismissing, *inter alia*, Plaintiffs' claims that Schulmann violated the anti-retaliation provision of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA" or "the Act"), as well as the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, when he directed their termination from positions as instructors at Tiger Schulmann Karate Schools. We agree with the district court's determination that there was no basis for individual liability with respect to the ADA retaliation claims made under 42 U.S.C. § 12203. We also hold that the district court correctly decided that the Plaintiffs failed to state a claim under the NYSHRL. However, with respect to the NYCHRL, we vacate and remand so that the district court may consider in the first instance whether obesity is a disability under the NYCHRL. We find the Plaintiffs' remaining bases for appeal to be without merit. Accordingly, we affirm in part and vacate the judgment of the district court, and remand.

## I.    Background

The parties do not dispute that in June 2002 Spiegel was terminated from his position as an instructor at a Tiger Schulmann Karate School located in Stamford, Connecticut. In the fall of 2002, Spiegel notified Schulmann and UAK that he intended to file an employment discrimination charge with the Connecticut Commission on Human Rights & Opportunities ("CCHRO"), alleging that he had been terminated on the basis of his weight.  Subsequently, in November 2002, Schatzberg, who was known to be Spiegel's friend and roommate, was terminated from his position as an instructor at a Tiger Schulmann Karate School in Rego Park, Queens.  After the Plaintiffs filed their original ADA complaint in the district court, the corporation that operates the Stamford karate school filed a lawsuit against Spiegel in Connecticut state court, alleging that he had attempted to interfere with the Stamford school's contract with one of its employees.  In their second amended complaint in this case, the Plaintiffs alleged, *inter alia*, that Schulmann had retaliated against them in violation of the anti-retaliation provision of the ADA by terminating Schatzberg from the Rego

4

Park Center and by filing the state court lawsuit against Spiegel, and that Schulmann had violated the NYSHRL and NYCHRL by terminating Spiegel on the basis of his weight.

The Defendants filed a motion for summary judgment, which the district court granted in its entirety. It found that it had no personal jurisdiction over UAK because the company did not do business in New York, nor did the claims in this action arise from any transactions conducted in New York. With respect to Schulmann, the court concluded that the ADA retaliation claims could not be sustained because Plaintiffs had offered no theory upon which Schulmann, an individual who was not the Defendants' employer, could be held liable for a claim of ADA retaliation. The Plaintiffs had failed to demonstrate a genuine issue of material fact with respect to the *prima facie* elements of their NYSHRL discriminatory firing claim, the court found, and had failed under the parallel NYCHRL claim to rebut as pretextual the legitimate, nondiscriminatory reasons for the firing produced by the Defendants.

This appeal followed.

## I.    Personal Jurisdiction over UAK

5

This Court reviews *de novo* a district court's legal conclusion regarding whether a party has demonstrated a *prima facie* case of personal jurisdiction. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). We hold that the district court lacked personal jurisdiction over UAK.

A district court's personal jurisdiction is determined by the law of the state in which the court is located. *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). In this case, the Plaintiffs argue that UAK was subject to the district court's personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1). Section 302(a)(1), however, provides for personal jurisdiction only with respect to causes of action arising out of the transaction of business conducted in New York. *See, e.g., Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez*, *171 F.3d 779*, 787 (2d Cir. 1999) (noting that a single transaction can satisfy the requirements of § 302(a)(1) "so long as the relevant cause of action also arises from that transaction") (citing *George Reiner & Co. v. Schwartz*, 363 N.E.2d 551 (N.Y. 1977)). The Plaintiffs allege that references to "headquarters" made by several

6

witnesses during depositions in this case demonstrate that UAK was involved in the decisions to terminate the Plaintiffs' employment. Nothing in the record, however, demonstrates that any witness used "headquarters" to refer to "UAK" or intended to suggest that UAK was the "headquarters" from which the directive to terminate the Plaintiffs originated.

The Plaintiffs also argue that the record demonstrated that UAK's services to the New York karate centers included personnel matters such that the terminations of the Plaintiffs arose out of those services. Again, nothing in the record demonstrates that, in the context of personnel matters, UAK provided anything more than administrative services and payroll processing to the New York karate centers. Although the record contains evidence that Vincent Gravina, a part-owner of the Rego Park Center, notified UAK employees when he terminated Shatzberg's employment, that evidence also demonstrates that Gravina did so only to effect Schatzberg's removal from the payroll of the karate center. The Plaintiffs have failed to offer any evidence that their causes of action against UAK arise from UAK's

7

transaction of business in New York State.  Accordingly, we affirm the district court's judgment on this point.[1]

## II.  State Law Invasion of Privacy Claim

We review a district court's grant of summary judgment *de novo*, "examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Sheppard v. Beerman*, 317 F.3d 351, 354 (2d Cir. 2003). "Summary judgment is appropriate only if it can be established that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Id*. (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted).

Under New York law, "a defendant's immunity from a claim for invasion of privacy is no broader than the consent

---

[1]   On appeal, the Plaintiffs argue that UAK was subject to the district court's personal jurisdiction because the company had registered to do business in New York State. Although such registration would have been sufficient to establish personal jurisdiction, *see Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 175-76 (N.Y. App. Div. 3d Dep't 1983), the Plaintiffs did not raise this argument before the district court and, thus, it is waived.  *See Singleton v. Wulff*, 428 U.S. 106, 120-21 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

executed to him." *Dzurenko v. Jordache, Inc.*, 451 N.E.2d 477, 478 (N.Y. 1983) (internal quotation marks omitted). Where the plaintiff's consent is limited with respect to form or forum, the use of the plaintiff's photograph is without consent if it exceeds the limitation. *Id.*

On appeal, the Plaintiffs rely on *Russell v. Marboro Books*, 183 N.Y.S.2d 8 (N.Y. Sup. Ct. 1959), and *Carlson v. Hillman Periodicals, Inc.*, 163 N.Y.S.2d 21 (N.Y. App. Div. 1st Dep't 1957), to support their argument that the use of Spiegel's altered photograph in the weight-loss advertisement exceeded the scope of the consent he had granted by signing the general release. In this case, however, the release signed by Spiegel was both broader and more clearly worded than the releases at issue in *Russell* and *Carlson*. By signing the release, Spiegel agreed "for all purposes, to the sale, reproduction and/or use in any manner of any and all photographs, videos, films, audio, or any depiction or portrayal of [himself] or [his] likeness and/or voice whatsoever." Although Spiegel might not have anticipated that his image would be altered for use as a "fat suit," the release clearly allowed the defendants to

9

use his image "in any manner" and to use "any depiction or portrayal" of Spiegel for "all purposes."  Given the lack of ambiguity in the release, the district court did not err in determining that there was no genuine issue of material fact with respect to whether the Defendants' use of Spiegel's image had invaded his privacy.  We affirm the grant of summary judgment on this claim.

## III.  Declining to Exercise Supplemental Jurisdiction

This Court reviews for abuse of discretion a district court's decision declining to exercise supplemental jurisdiction.  *See N.Y. Mercantile Exch., Inc. v. IntercontinentalExch., Inc.*, 497 F.3d 109, 113 (2d Cir. 2007).  In order to decide Plaintiffs' state and municipal retaliation claims, the district court would have been required to determine whether, under the applicable state and municipal laws, an allegedly frivolous lawsuit filed in another state's court constituted a retaliatory act for purposes of the NYSHRL and the NYCHRL.  To decline to do so clearly was not an abuse of discretion.

## IV. Denial of Motion to Amend

We review for abuse of discretion a district court's decision denying a motion to amend. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 242 (2d Cir. 2007). Where the denial of leave to amend is based upon a legal interpretation, however, this Court reviews it *de novo*. *Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001) (per curiam). The district court denied the Plaintiffs' motion to amend their complaint to add TSK Franchise Systems as a defendant. It reasoned that, because it had already determined the Plaintiffs had failed to demonstrate personal jurisdiction over UAK, and because the proposed allegations against TSK were identical to the allegations against UAK, allowing such an amendment would be futile.

A review of the proposed third amended complaint and the record demonstrates that the district court did not abuse its discretion in denying the motion to amend. As discussed above, the district court properly determined that it lacked personal jurisdiction over UAK. Neither the Plaintiffs' third amended complaint nor the evidence adduced during discovery provided any basis to demonstrate that the

11

district court would have had personal jurisdiction over TSK.  Accordingly, we affirm the district court's order denying the Plaintiffs' motion for leave to amend their complaint.

**V.   Denial of Motion to Enjoin the State Court Lawsuit**

When a district court declines to issue an injunction, we review for clear error the court's factual conclusion that an injunction is not necessary, and we review *de novo* the court's interpretation of the All Writs and Anti-Injunction Acts.  *See Retirement Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004). The Anti-Injunction Act prohibits a district court from granting an injunction staying a state court proceeding "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283; *see Mitchum v. Foster*, 407 U.S. 225, 236-37 (1972) (setting forth criteria for determining whether a statute expressly authorizes a district court to issue injunctions).

Without determining whether the Anti-Injunction Act applies to requests for injunctions of state court

12

proceedings that are allegedly retaliatory under the ADA, we conclude that the district court did not err in declining to issue the injunction sought by the Plaintiffs. Although the Plaintiffs argued that the state lawsuit was "patently frivolous," they offered no evidence to support that conclusory statement. *See, e.g., EEOC v. Levi Strauss & Co.*, 515 F. Supp. 640, 644 (N.D. Ill. 1981) (noting that "[i]n order to establish the propriety of an injunction, the [party seeking to enjoin an allegedly retaliatory state court lawsuit] must demonstrate that the action was filed for improper, *i.e.* retaliatory, purposes"). Further, other than general allegations regarding Schulmann's control over Stamford Karate, there is no evidence in the record that Schulmann directed the filing of the lawsuit against Spiegel. Accordingly, to the extent that the ADA might "expressly authorize" the issuance of the type of injunction sought by the Plaintiffs, the Plaintiffs offer no basis upon which this Court can determine that the district court erred in failing to do so. We affirm the court's order declining to enjoin proceedings in the Connecticut lawsuit.

13

## VI.   Individual Liability under the ADA Retaliation Provision

42 U.S.C. § 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  With respect to retaliation claims in the context of employment discrimination, § 12203(c) adopts, *inter alia*, "[t]he remedies and procedures available under [42 U.S.C. §] 12117. . .."  Section 12117 specifically makes applicable to actions under the ADA the remedies available under 42 U.S.C. § 2000e-5.  *See* 42 U.S.C. § 12117(a) (providing that "[t]he powers, remedies, and procedures set forth in section[ ] . . . 2000e-5 . . . of this title shall be the powers, remedies, and procedures this subchapter provides to . . . any person alleging discrimination on the basis of disability").

This Court has not addressed the issue of whether § 12203 provides for individual liability.  We have, however, determined that the remedial provisions of Title VII,

14

including § 2000e-5, do not provide for individual liability. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-14 (2d Cir. 1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Accordingly, it follows that, in the context of employment discrimination, the retaliation provision of the ADA, which explicitly borrows the remedies set forth in § 2000e-5, cannot provide for individual liability.

This conclusion is arguably contrary to a literal reading of § 12203(a), where the phrase "[n]o person shall" suggests the possibility of individual liability. Because we apply the remedies provided in Title VII to the anti-retaliation provision of the ADA, however, § 12203 presents that "rare case[]" in which "a broader consideration of" the ADA, in light of the remedial provisions of Title VII, "indicates that this interpretation of the statutory language does not comport with Congress'[s] clearly expressed intent." *Tomka*, 66 F.3d at 1314. Accordingly, the district court's conclusion that Schulmann could not be liable for the alleged acts of retaliation was correct and

15

presents no basis for disturbing the grant of summary judgment to Schulmann on the Plaintiffs' ADA retaliation claims.[2]

### VII.  The NYSHRL and NYCHRL Claims

In their complaint, the Plaintiffs claimed that Schulmann had violated the NYSHRL and the NYCHRL by terminating Spiegel because of his weight.  This Court has determined that a plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII.  *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 216-17 (2d Cir. 2005).  Under this test, a plaintiff establishes a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he was

---

[2]  Plaintiffs correctly point out that the district court failed to address their claim that Schulmann ordered Schatzberg's termination in retaliation for Schatzberg's support of Spiegel's discrimination claim.  Because this retaliation claim, which alleges that the termination violated § 12203, is raised against Schulmann as an individual, the reasoning already discussed in this opinion applies with equal force, and the claim presents no basis for remand.  *See Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam) ("On appeal, we may affirm a district court's grant of summary judgment on any ground upon which the district court could have rested its decision.").

16

competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination. *Id.* at 216. If the plaintiff succeeds in establishing a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to the defendant, who must proffer some legitimate nondiscriminatory reason for the adverse action. *Id.* "If the defendant proffers such a reason, the presumption of discrimination . . . drops out of the analysis, and the defendant will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (internal quotation marks and citation omitted). The plaintiff must demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant is actually pretext for discrimination. *Id.*

Under the NYSHRL, it is an unlawful discriminatory practice for an employer to discharge an individual because of a disability, which is a "a physical, mental or medical

17

impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law §§ 292(21), 296(1)(a).  Here, with respect to the Plaintiffs' claim that the Defendants had violated the state anti-discrimination laws by terminating Spiegel on the basis of his weight, the district court first determined that Spiegel had failed to establish a *prima facie* case because he had failed to show that he was disabled for purposes of that statute.  That is, he had not demonstrated that his weight was the result of a medical condition.  As the district court pointed out, New York courts have determined that, under the NYSHRL, "weight, in and of itself, does not constitute a disability for discrimination qualification purposes and . . . discrimination claims in that respect are . . . unsustainable."  *Delta Air Lines v. N.Y. State Div. of Human Rights*, 689 N.E.2d 898, 902 (N.Y. 1997).  In order to succeed on a weight-based discrimination claim under the NYSHRL, a plaintiff must "proffer evidence or make a record establishing that [he is] medically

18

incapable of meeting [the employer's] weight requirements due to some cognizable medical condition."  *Id*.

On appeal, the Plaintiffs argue that Spiegel did present evidence to demonstrate that a medical condition rendered him incapable of losing weight — and point to the letter from Spiegel's physician diagnosing him with hypogonadism.  That letter, on its own, however, does not connect Spiegel's weight to this diagnosis.  Further, Spiegel's argument that other evidence in the record demonstrated that his medical condition rendered him incapable of losing weight lacks merit.  In his affidavit to the CCHRO, Spiegel stated that his condition caused him "to gain excessive weight."  In his deposition testimony, Spiegel stated that he had gone to a physician hoping to lose weight and maintain his position with the karate centers, and that the physician had diagnosed him with a hormonal imbalance.  Although these statements demonstrate that Spiegel believed there was a connection between his condition and his inability to lose weight, there is no competent medical evidence confirming that connection.  Even drawing the inferences in favor of the Plaintiffs on this

19

claim, the evidence in the record was insufficient to demonstrate a genuine factual dispute with respect to whether Spiegel was medically incapable of losing weight such that he might have qualified as disabled under the NYSHRL.  Accordingly, we affirm the district court's grant of summary judgment to Schulmann on the Plaintiffs' NYSHRL claim.

With respect to the Plaintiffs' claim that Schulmann had violated the NYCHRL, the district court assumed, without deciding, that Spiegel's weight might constitute a disability under that law.  The court concluded, however, that Spiegel had failed to adduce evidence that Schulmann's explanation for the termination was pretext for discrimination.  In making this determination, the district court acknowledged Spiegel's deposition testimony that Vincent Gravina, who was the "leader" of the Bensonhurst Center at the time of Spiegel's termination from that center, had initially told Spiegel that the termination was based on his weight, but the court concluded that the testimony was inadmissible hearsay and, thus, not sufficient to withstand a motion for summary judgment.  On appeal, the

20

Plaintiffs, citing to Fed. R. Evid. 801(d)(2), argue that the district court "inexplicably dismissed Spiegel's testimony as hearsay."

It is well established that, "in determining the appropriateness of a grant of summary judgment, [this court], like the district court in awarding summary judgment, may rely only on admissible evidence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). As a preliminary matter, the testimony rejected by the district court as inadmissible hearsay likely would have created a genuine issue of material fact with respect to the legitimacy of the Defendants' proffered reason for Spiegel's termination from the Bensonhurst center. Spiegel's testimony that Gravina told him that the termination was weight-related directly contradicted Gravina's testimony about the reason for the termination. Further, Spiegel's CCHRO affidavit - attesting that Schulmann had directly stated that Spiegel could no longer work for the karate centers because of his weight - also directly contradicted the Defendants' proffered reason for the decision to terminate him.

21

It was error to conclude that Spiegel's testimony regarding Gravina's statements was hearsay. Further, the district court overlooked the portion of Spiegel's affidavit in which he stated that Schulmann had terminated him for being overweight. Although each item of evidence consists of Spiegel's description of what another person said to him, Federal Rule of Evidence 801(d)(2) specifically provides that a statement is not hearsay if it is offered against a party and is either "(A) the party's own statement, in either an individual or a representative capacity or . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

Spiegel's affidavit described Schulmann's statement that he was terminating Spiegel based on Spiegel's weight. Were Spiegel to testify at trial in this matter, his testimony regarding Schulmann's statement would be admissible under Rule 801(d)(2)(A) because Schulmann is a party to this proceeding and the statement was his own. Further, Spiegel's testimony regarding Gravina's statement would be admissible under Rule 801(d)(2)(D). The record contained

22

evidence that Gravina and Schulmann were co-owners of the corporation that owned and operated the Bensonhurst school, with Schulmann owning a controlling interest in the corporation. Schulmann testified that he had, on another occasion, directed the co-owner of the Stamford center to fire Spiegel. Spiegel testified that Gravina stated that he had been told to fire Spiegel from the Bensonhurst center because of Spiegel's weight. The relationship between Gravina and Schulmann, as well as Schulmann's direction to another center's owner to fire Spiegel, creates the inference that Gravina was acting as Schulmann's agent or servant when he told Spiegel that the termination was based on Spiegel's weight. If this inference is drawn in the Plaintiffs' favor, Spiegel's description of Gravina's statement is admissible against Schulmann as the statement of his agent or servant, made during the existence of the relationship between Gravina and Schulmann.

Had the district court considered the Plaintiffs' evidence on this point, it could not have relied on the lack of evidence of pretext as a basis for granting the Defendants summary judgment on this claim. Rather, it would

23

have been required to determine whether the Plaintiffs satisfied the *prima facie* element of their municipal law claim.

The NYCHRL makes it an unlawful discriminatory practice for an employer to discharge an employee "because of the actual or perceived . . . disability" of that individual. N.Y. City Admin. Code § 8-107(1)(a). The NYCHRL defines "disability" as "any physical, medical, mental or psychological impairment," *id.* § 8-102(16)(a), which is then defined, in relevant part, as "an impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system." *Id.* § 8-102(16)(b)(1). This definition of disability is, on its face, broader than that provided by the NYSHRL.

Neither the New York Court of Appeals nor any intermediate New York appellate court has addressed the

24

question whether obesity alone constitutes a disability for the purposes of the NYCHRL.  The New York courts have recently noted that, under the Local Civil Rights Restoration Act of 2005, Local Law No. 85 of the City of New York, "analysis [of NYCHRL provisions] must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's 'uniquely broad and remedial' purposes, which go beyond those of counterpart State or federal civil rights laws." *Williams v. N.Y. City Housing Auth.*, 61 A.D.3d 62, 66 (N.Y. App. Div. 2009), *leave to appeal denied by* 13 N.Y.3d 702 (2009).  "In short, the text and legislative history represent a desire that the City HRL 'meld the broadest vision of social justice with the strongest law enforcement deterrent.'"  *Id.* at 68 (quoting Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law*, 33 Fordham Urb. L.J. 255, 262 (2008)).  These general observations regarding NYCHRL provisions, however, have not been considered by these courts in the context of a claim related to obesity.

As a result of the district court's incorrect evidentiary determination, the district court did not address the question whether obesity alone constitutes a disability pursuant to the NYCHRL.  We conclude that it is thus appropriate here to remand to the district court for it to consider in the first instance whether Spiegel has made out a *prima facie* case of discrimination under the disability provision of the NYCHRL, interpreting any applicable provisions of the NYCHRL and the Restoration Act. On remand, the district court may also decide whether to exercise supplemental jurisdiction over this claim; it may determine that this area of law would benefit from further development in the state courts and therefore dismiss the claim without prejudice to refiling in state court.

## VIII.  Assignment to a Different District Court Judge

Finally, the Plaintiffs request that this Court direct that this case be assigned to another district court judge on remand.  "Reassignment of a case on remand should occur only when the facts might reasonably cause an objective observer to question the judge's impartiality."  *United*

26

*States v. Cole*, 496 F.3d 188, 195 (2d Cir. 2007) (citing *United States v. Londono*, 100 F.3d 236, 242 (2d Cir. 1996)). Plaintiffs argue that the district court's ruling is so far off the mark that it "can only be explained by a bias against Plaintiffs' claims." App. Br. at 46-47. As we are affirming with respect to nearly all claims, we obviously do not share Plaintiffs' view that the district court's decision could only have been based on bias.

The Plaintiffs also contend that "the judge all but explained . . . that . . . she had undertaken to scour the record to find a basis for knocking out Plaintiffs' claims." App. Br. at 47. The district court, however, explicitly relied on our past holding that a district court may "opt to conduct an assiduous review of the record even where one of the parties has failed to file [a proper Rule 56.1] statement." Dist. Ct. Op. at 2 n.3 (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)) (internal quotation marks omitted). We decline the invitation to presume a district judge's bias from her searching review of the record. The Plaintiffs have not pointed to anything in the record indicating that Judge Townes was not impartial

27

and rely merely on their fundamental disagreements with her on questions of law.  Such disagreements are no basis for reassignment.

**IX.  Conclusion**

For the foregoing reasons, we **AFFIRM** the judgment of the district court in part and **VACATE AND REMAND** in part.