Christine **VILLANTI**, Plaintiff,

v.

**COLD SPRING HARBOR CENTRAL SCHOOL DISTRICT**, Andrea Clouser **(sued in her Official and Individual Capacities), Thomas P. Dolan, (sued in his Official and Individual Capacities), Joseph Monestaro (sued in his Official and Individual Capacities), Jay Matuk (sued in his Official and Individual Capacities), Defendants.**

**No. 08–CV–434 ADS MLO.**

United States District Court, E.D. New York.

Aug. 20, 2010.

Scott Michael Mishkin, P.C., by: Scott Michael Mishkin, Esq., Bruce E. Wingate, Esq., of Counsel, Islandia, NY, for the plaintiff.

Cruser Mitchell & Novitz LLP, by: Rondiene E. Novitz, Esq., Keith V. Tola, Esq., of Counsel, Melville, NY, for the defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Christine Villanti, a junior high school science and health teacher, filed this suit against her employer and various school administrators, alleging violations of the Americans with Disabilities Act ("ADA") and related New York state laws. The defendants now move for summary judgment on all claims. For the reasons that follow, the Court grants this motion in part and denies it in part.

### I. BACKGROUND

Plaintiff Christine Villanti is forty-four years old, and has taught science and health at the Cold Spring Harbor Junior/Senior High School (the "High School") since 2001. During the summer break in

2004, Villanti experienced a mild heart attack for which she was temporarily hospitalized. Villanti was ultimately diagnosed with an ongoing condition called "vasospastic angina," which the Court understands to mean that Villanti experiences chest pains that are related to contractions of the blood vessels in her heart. *See Stedman's Medical Dictionary* at 80, 1934 (27th ed. 2000). Villanti states that her chest pains worsen with stress, changes in the weather, and physical exertion, and that her condition has significantly affected her ability to do a number of things, including exercise, carry heavy weights, and do stressful activities.

Villanti returned to teaching in the fall of 2004 without missing any work. She states that she informed school administrators about her heart attack shortly after it happened, and then requested certain accommodations. Although her requests changed to some extent over the next three years, Villanti primarily asked that (1) she teach in only one classroom, (2) she should teach a limited number of classes each week, (3) she should not teach more than two *unique* classes, and (4) she not teach more than two or three consecutive class periods.

According to Villanti, her superiors granted most, if not all, of these accommodations for the 2004–05 school year, but then refused to accommodate any of her requests during the next two and a half years. In July 2006, the plaintiff filed a formal complaint with the Equal Opportunity Employment Counsel ("EEOC") concerning the denial of her requests. Villanti alleges that, in response to this complaint and her previous requests for accommodation, her superiors gave her an increasingly heavy workload; gave her negative reviews; increased their supervision of her; and stymied her professional development

On January 31, 2008, the plaintiff filed the present lawsuit, naming five defendants:

- The Cold Spring Harbor School District;
- Thomas Dolan, the principal at the High School until June 30, 2006;
- Jay Matuk, the principal at the High School after June 30, 2006;
- Andrea Clouser, the Chairperson for the Science Department at the High School; and
- Joseph Monestaro, an Assistant Principal at the High School until 2006, who was charged with preparing the teaching schedule for the school.

Against all of these defendants, the plaintiff asserts the following causes of action: (1) Under the ADA alleging discrimination and failure to accommodate, 42 U.S.C. §§ 12101 *et seq.*, (2) Under the ADA sounding in retaliation for protected acts, and (3) violation of the New York State Human Rights Law, codified at New York Executive Law §§ 290 *et seq.*

The defendants now move for summary judgment with respect to the first two causes of action, and request that the Court decline to exercise pendant jurisdiction over the third cause of action. The defendants move to dismiss the plaintiff's first cause of action on grounds, among other contentions, that the plaintiff has failed to demonstrate that she has a "disability" under the relevant federal definition. With respect to the plaintiff's retaliation claim, the defendants seek dismissal primarily on the ground that none of the acts that the plaintiff complains of were sufficiently adverse to her to be retaliatory under the law.

## II. DISCUSSION

### A. Summary Judgment Standard

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper

only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

## B. As to the Plaintiff's Claim for Discrimination and Failure to Accommodate

■ The plaintiff's first cause of action is for discrimination and failure to accommodate. In this cause of action, the plaintiff essentially asserts that the defendants treated her unfairly because of her medical condition, and also failed to reasonably accommodate her medical needs in the workplace. As a prerequisite to a claim under either of these theories, a plaintiff must demonstrate that she had a "disability" as defined under the ADA. *Conley v. United Parcel Serv.*, 88 F.Supp.2d 16, 18 (E.D.N.Y.2000). Because the issue of the plaintiff's alleged disability is dispositive in this case, the Court addresses only this factor with respect to the plaintiff's first cause of action.

An individual has a disability within the meaning of the ADA if she: "(A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) [has] a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635 (2d Cir.1998); *Conley*, 88 F.Supp.2d at 18. Here, the plaintiff advances in her complaint and opposition papers only the theory that that she *had* a qualifying impairment. She does not assert that there was a *record* of her having such an impairment or that she was *regarded* as having a qualifying impairment. To the extent that the plaintiff appears to assert facts in her Rule 56.1 statement that go to a perception or record of impairment, the Court finds that the plaintiff has not raised triable issues of fact on these grounds.

### 1. Applicability of the 2008 Amendments to the ADA

■ On January 4, 2008, the United States Congress enacted the ADA Amend-

ments Act of 2008 ("ADAAA"), thereby modifying the standard by which courts assess whether a person has a disability under the ADA. Pub. L. 110–325. The ADAAA substantially broadened the definition of a "disability" under the law, and explicitly overturned the Supreme Court's holdings in *Sutton v. United Air Lines,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) and *Toyota Motor Manufacturing v. Williams,* 534 U.S. 184, 185, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), which had defined the statutory terms "substantially limits" and "major life activities" strictly. Although the ADAAA was passed on January 4, 2008, it did not take effect until January 1, 2009. Pub. L. 110–325, § 8.

The plaintiff now urges the Court to apply to this case the definition of "disability" as modified by the ADAAA, in spite of the fact that all of the relevant facts occurred prior to the effective date of the ADAAA. By contrast, the defendants assert that retroactive application of the ADAAA is inappropriate, and that the previous definition of "disability" is applicable.

While the Second Circuit has not yet addressed this issue in a published decision, it has held in multiple summary orders that the ADAAA does not apply retroactively. See, e.g., *Ragusa v. Malverne Union Free Sch. Dist.,* 381 Fed.Appx. 85, 87, n. 2 (2d Cir.2010); *Rogers v. City of N.Y.,* 359 Fed.Appx. 201, 203, n. 1 (2d Cir.2009). Moreover, other federal district and circuit courts have held almost universally that the ADAAA does not apply retroactively. *See EEOC v. Agro Distrib.,* 555 F.3d 462, 469 (5th Cir.2009); *Kiesewetter v. Caterpillar, Inc.,* 295 Fed.Appx. 850, 851 (7th Cir.2008); *Casseus v. Verizon N.Y., Inc.,* No. 08–cv–4119, 722 F.Supp.2d 326, 2010 WL 2736935 (E.D.N.Y. Jul. 9, 2010); *White v. Sears,* No. 07–CV–4286, 2009 WL 1140434, at *4 (E.D.N.Y. Apr. 27, 2009); *Moran v. Premier Educ. Group,*

*LP,* 599 F.Supp.2d 263, 271–72 (D.Conn. 2009). The Court finds these cases to be persuasive. The ADAAA contains no language indicating that it applies retroactively, and it would work an injustice on parties to be held liable for conduct that they would have reasonably believed at the time was in compliance with the law.

Nevertheless, the plaintiff urges that the Court apply the ADAAA retroactively based on the Sixth Circuit's unpublished decision in *Jenkins v. National Board of Medical Examiners,* No. 08–5371, —— Fed.Appx. ——, ——, 2009 WL 331638, at *1 (6th Cir. Feb. 11, 2009). However, the reasoning in *Jenkins* confirms, rather than impeaches, the Court's present holding. The plaintiff in *Jenkins* filed a claim in 2008, before the ADAAA took effect, asserting that his diagnosed reading disorder was a disability under the ADA. *Id.* Based on this alleged disability, the plaintiff sought extra time to take a national medical exam. *Id.* However, the plaintiff asserted no claims for monetary damages or other retrospective relief. *Id.* In deciding *Jenkins,* the Sixth Circuit implicitly acknowledged the potential injustice that would come from awarding retrospective relief based on the amended definition of "disability", but held that "[b]ecause Jenkins seeks *prospective relief,* no injustice would result from applying the amended law." *Id.* (emphasis added).

In the Court's view, the Sixth Circuit's decision is entirely consistent with this Court's determination not to apply the ADAAA to claims for money damages such as the plaintiff's. The Court therefore applies the definition of "disability" from the ADA as interpreted prior to the enactment of the ADAAA.

### 2. Application of the Disability Standard

■ Courts in the Second Circuit follow a three-step process to determine whether

a person has a disability under the ADA. As such, a court analyzes: "(1) whether the plaintiff suffered from a physical or mental impairment, (2) whether the life activity upon which the plaintiff relied constitutes a major life activity under the ADA, and (3) whether the plaintiff's impairment substantially limited the major life activity identified." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004) (internal quotations, citations, and alterations omitted) (citing *Colwell*, 158 F.3d at 641). The Court will now apply these rules to this case.

*Did the Plaintiff Have a Physical or Mental Impairment*

The parties here agree that the plaintiff's heart-related chest pains are a physical impairment. Thus, the Court need not address this issue further.

*Did the Plaintiff's Impairment Limit a Major Life Activity*

■ In her complaint, the plaintiff states that her impairment limited the major life activity of working. In her opposition papers, she also contends that her condition affected her ability to "lift[ ], carry[ ], and exercise[e]." (Pl.'s Resp. at 8.) The Court therefore analyzes whether any of these four activities is a major life activity.

First, there is no doubt that working is a major life activity. The EEOC regulations interpreting the ADA, to which courts properly look for guidance, explicitly identify it as such. *See Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir.2005) (citing 29 C.F.R. § 1630.2(i)). Lifting and carrying are at least arguably major life activities, and the Court assumes without deciding that these activities are major life activities. *See Colwell*, 158 F.3d at 643. Similarly, though there is some doubt as to whether exercise is a major life activity, *see id.*; *Johns–Davila v. City of New York*,

No. 99–cv–1885, 2000 WL 1725418, *6 (S.D.N.Y. Nov. 20, 2000) (collecting cases), the Court also assumes without deciding that it is a major life activity.

*Did the Plaintiff's Impairment Substantially Limit the Major Life Activities Identified*

The plaintiff provides two sources of evidence to describe the effects of her various conditions: three letters from her doctor, Richard H. Dyckman; and her own testimony. The Court addresses these sources in turn.

The three letters from Dr. Dyckman, dated June 20, 2006, May 24, 2007, and June 17, 2008, are not extensive. The first letter, addressed generically "To Whom It May Concern," states that Villanti developed "vasospastic angina" after a "myocardial infarction" in 2004, and that she has had "mild flare-ups" since then. (Letter from Dr. Richard Dyckman to Whom it May Concern ("Dyckman Letter I"), dated June 20, 2006.) The only conclusion that the letter states is that Villanti requires "accommodations . . . in her work environment to minimize external stress." (*Id.*) The nature of these proposed accommodations is not discussed.

The second letter, dated almost a year later, May 24, 2007, and addressed to defendant Andrea Clouser, an administrator at the High School, identifies Villanti's diagnosis as "recurrent stress-induced vasospastic angina with documented myocardial injury," and states that her condition:

> requires that she be assigned to one classroom (to obviate the need for her to switch rooms multiple times each day), and that her classroom needs to be fully "set-up" for her assigned course work so that she will not have to transport textbooks and supplies to her room on a daily basis.

(Letter from Dr. Richard Dyckman to Andrea Clouser, dated June 20, 2006 ("Dyckman Letter II") (emphasis in original).)

The third letter is dated one year after the second letter, June 17, 2008, and is addressed to the Deputy Superintendent of Cold Spring Harbor School District, Dr. Judith A. Wilansky. In that letter, Dr. Dyckman states that while Villanti's "cardiac function has ... largely normalized [since her heart attack in 2004], she continues to have episodes of stress-induced vasospastic angina." (Letter from Dr. Richard Dyckman to Judith Wilansky, dated June 17, 2008 ("Dyckman Letter III").) Dr. Dyckman then states that:

> [Villanti's] condition appears to be exacerbated by stress in her work environment. Toward that end, I would very strongly recommend, if possible, that her classroom assignments be made with a view toward minimizing her need to switch rooms multiple times a day, and that if she needs to work in several different classrooms, that they be fully 'set up' so that she does not have to transport textbooks or supplies between rooms on a daily basis.

(Id.) Dr. Dyckman concludes that "[i]f such reasonable accommodations are made, I anticipate that she will be able to carry a full academic load." (Id.)

Villanti also provides her own deposition testimony describing the limitations that her condition imposes on her. In general, Villanti states that when she experiences "stress", "change[s] in the room temperature", or when she is "exerting [herself] physically", she has intermittent chest pains, with "sometimes ... a little numbness in my left arm," and "occasionally" shortness of breath. (Villanti Dep., dated May 19, 2009 ("Villanti Dep. II") at 134:17–18, 135:4, 11–12.) Villanti affirms that because of this, she doesn't carry her

son "often," or ever carry "filled laundry baskets." (Id. at 154:19, 145:18–19.)

Villanti further states that, as a result of her condition, she does "less cardiovascular exercise than [she] would like to." (Id. at 119:9–10). Whereas before her heart attack she was a member of a gym, her exercise now amounts only to lifting ten pound weights twice a week, taking very short walks twice a week, and exercising on an elliptical machine—a low-impact substitute for a treadmill-twice a month.

As for her work, Villanti maintains that she experiences chest pains if she teaches more than "three [or] four consecutive [forty-minute class] periods in a row without a break." (Id. at 135:19–21.) Likewise, she experiences pain as a result of the stress of teaching "a different subject for three consecutive periods." (Id. at 136:10–11.) In addition, Villanti testified that she gets chest pains from moving items like "textbooks, ... laboratory manuals, [and] ... lab materials" between classrooms. (Villanti Dep., dated September 27, 2006 ("Villanti Dep. I") at 8:22–23.)

The EEOC has promulgated regulations for courts to consider when determining whether a person is substantially limited in a particular major life activity. Under these regulations, "substantially limits" means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Further, the regulations provide that, when determining whether a person is substantially limited in

a major life activity, courts should consider:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). In determining whether a person is substantially limited in the major life activity of working, the EEOC has provided that:

The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

■ Generally, to survive summary judgment on the issue of whether a plaintiff's condition substantially limits a major life activity, a plaintiff must not only (1) describe how those life activities are limited, but must also (2) support this description with competent medical evidence. *See Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 722–23 (2d Cir.1994) (requiring medical evidence to show substantial limitation under the Rehabilitation Act's parallel statutory requirements); *Levy v. Hustedt Chevrolet,* No. 05–cv–4832, 2008 WL 5273927 at *5 (E.D.N.Y. Dec. 17, 2008) (requiring medical evidence to sustain a claim under the ADA); *Sussle v. Sirina Prot. Sys. Corp.,* 269 F.Supp.2d 285, 301–02 (S.D.N.Y.2003) (same, collecting cases).

Here, the plaintiff's medical evidence is insufficient to support her claim that she is substantially limited in working, lifting, carrying, or exercising. First, the letters do not describe the plaintiff's condition in detail, nor do they explain in detail the basis for the accommodations requested in the letters. All three of Dr. Dyckman's letters state that the plaintiff has "vasospastic angina," but none explains the severity or result of this condition. Similarly, while some of the letters request specific accommodations, the only apparent basis for these accommodations is that the plaintiff should not be exposed to "stress." (Dyckman Letter I ("accommodations need to be made in [Villanti's] work environment to minimize external stress"); Dyckman Letter II (describing the plaintiff's condition as "stress-induced"); Dyckman Letter III ("[Villanti's] condition appears to be exacerbated by stress").)

Likewise, Dr. Dyckman's descriptions of the accommodations Villanti requires at her work are either vague or contradictory. The June 2006 letter provides no description of the accommodations Villanti needs, except to say that Villanti should have her "external stress" minimized. (Dyckman Letter I.) Dr. Dyckman provides a much clearer and more emphatic mandate in his May 2007 letter: Villanti's condition *"requires that she be assigned to one classroom...."* (Dyckman Letter II (emphasis in original).) However, Dr. Dyckman does not explain clearly why this is necessary, and in his following letter he retreats from this position, stating that he "very strongly recommend[s], if possible" that Villanti be scheduled so as to "minimize her need to switch rooms multiple times a day." (Dyckman Letter III.) This third letter then requests that Villanti not be required to move books · or supplies between rooms, but also expressly admits of the possibility that Villanti might "work in *several* different classrooms." (*Id.* (emphasis added).) Finally, Dr. Dyckman

concludes that, "if such reasonable accommodations are made, I anticipate that [Villanti] will be able to carry a *full academic load.*" (*Id.* (emphasis added).)

Considering this medical evidence in light of the direction provided by the EEOC regulations interpreting the ADA, the Court finds that it is insufficient to show that the plaintiff is substantially limited in her ability to work, lift, carry, or exercise. First, with respect to lifting, carrying, and exercising, Dr. Dyckman's letters provide virtually no information. While Dr. Dyckman's latter two letters request that Villanti not "transport" books and supplies between classrooms, he makes no explicit mention of her ability to lift or carry items or to do other forms of exercise. With respect to working, Dr. Dyckman's letters at most suggest that Villanti cannot work as a teacher if she must repeatedly move classrooms and transport materials. This does not support the conclusion that Villanti is restricted from performing either "a class of jobs or a broad range of jobs in various classes," 29 C.F.R. § 1630.2(j)(3)(i), as required to show a substantial limitation of the ability to work.

■ Even if medical evidence were not required to avoid summary judgment on this issue, the plaintiff's own description of her limitations is insufficient to establish that she is significantly restricted in any major life activity. First, the plaintiff's testimony demonstrates her capacity to carry out the major life activities she identifies. The plaintiff states that, on a limited basis, she lifts weights, takes short walks, and exercises on an elliptical machine. She also states that she sometimes carries her son or light objects. Her ability to do this precludes her from being found to be substantially limited in lifting, carrying, or exercising. *See id.* at 640, 644 (holding that an inability to lift heavy ob-

jects and an inability to do some exercise are not substantial limitations of major life activities); *Piascyk v. City of New Haven,* 64 F.Supp.2d 19, 29–30 (D.Conn.1999) (holding that an inability to lift heavy objects was not a substantial limitation of a major life activity, and collecting cases).

■ As for the plaintiff's testimony with regard to her limitations on her ability to work, the Court has already noted that applicable EEOC regulations explicitly provide that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Here, even if the plaintiff had testified that she is unable to perform her current job—a conclusion about which the Court has some doubt—she has not offered any testimony indicating that she could not perform another comparable job in her field. *See Colwell,* 158 F.3d at 645 (granting defendant employer judgment as a matter of law on disability issue, and holding that "[w]ithout specific evidence about 'the kinds of jobs from which [an] impaired individual is disqualified,' the jury could not perform the careful analysis that is necessary to determine that [the plaintiff] was substantially limited in his ability to work," citing *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir. 1994)). To the extent that the plaintiff asserts that she cannot perform jobs that are stressful, this category is insufficient to satisfy the requirements of the ADA. *See id.* at 645 (holding that there was no substantial limitation of the ability to work when plaintiff presented evidence that his doctor instructed him to "avoid stress").

Therefore, the Court finds that the plaintiff cannot meet her burden of showing that she has a disability as defined under the ADA. As such, the plaintiff cannot sustain a claim either for discrimination or failure to accommodate, and the

Court grants the defendants' motion for summary judgment dismissing the plaintiff's claim for discrimination and failure to accommodate.

## C. As to the Plaintiff's Retaliation Claim

■■ The plaintiff separately asserts a claim against the defendants for retaliating against her for complaining about the defendants' alleged discrimination and failure to accommodate. To assert this claim under the ADA, the plaintiff need not show that she was disabled under the meaning of the ADA. Rather, she must only "possess[ ] a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Treglia v. Town of Manlius* 313 F.3d 713, 719 (2d Cir.2002) (quoting *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir.1999)). Here, the defendants do not challenge the plaintiff's good faith belief, and the Court's finding that the plaintiff was not disabled under the provisions of the statute does not preclude the plaintiff from advancing a retaliation claim.

■ To analyze a claim for retaliation, the Court employs the familiar *McDonnell Douglas* burden shifting test, as modified for the retaliation context. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir.2002). Thus, in the first step of the process, the plaintiff must show that she "[1] was engaged in protected activity, [2] that the defendant was aware of this activity, [3] that the defendant took adverse action against the plaintiff, and [4] a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Id.* (internal quotations, citations, and alterations omitted). If the plaintiff thus succeeds in establishing a prima facie case of discrimination,

the defendants must then produce a non-discriminatory reason for the complained-of conduct. *Id.* Upon the production of this reason, the plaintiff then must meet her ultimate burden of showing that the defendants' acts were retaliatory. *Id.*

### 1. The Prima Facie Case

■ The parties here agree that the plaintiff has satisfied the first two prongs of the prima facie case required by the *McDonnell Douglas* test. The plaintiff made numerous requests for accommodations and filed a formal complaint with EEOC with regard to the denial of these requests. Making these requests and filing this complaint was protected activity, satisfying the first prong of the prima facie case. *See Treglia*, 313 F.3d at 720; *Weixel v. Board of Education of the City of New York*, 287 F.3d 138, 149 (2d Cir.2002) (citing *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir.1999)). The parties also agree that the defendants were aware of this activity, thus satisfying the second prong. However, the parties vigorously contest whether the plaintiff has satisfied the third prong of the prima face case, which requires that the plaintiff show that the defendants took adverse action against her.

■ In the retaliation context, an "adverse action" is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Alam v. HSBC Bank USA, N.A.*, No. 07–cv–3540, 2009 WL 3096293 at * 12 (S.D.N.Y. Sept. 28, 2009) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Here, the plaintiff has asserted that the defendants took numerous retaliatory actions against her, most of which the Court views as unsupported or insubstantial. However, the Court is satisfied that there are genuine issues of fact with respect to at least one alleged retalia-

tory act: whether the defendants unfairly increased the burden of the plaintiff's teaching schedule between the 2005–2006 and the 2006–2007 school years. As such, summary judgment with respect to the plaintiff's retaliation claim is not appropriate.

The parties agree that during the 2005–2006 school year, Villanti taught only two different classes, and taught in just one classroom. Then, for the 2006–2007 school year, Villanti was additionally scheduled to teach three different subjects rather than two, and to teach in two different classrooms rather than one. The plaintiff further asserts that she was scheduled to teach more periods in a row in 2006–2007 compared to the previous year, though the defendants dispute this.

These scheduling changes are not dramatic, and, in fact, the plaintiff's contract provided that she was obligated to take on the additional burdens assigned to her. Nevertheless, the United States Supreme Court has stated that changing an employee's working conditions may be a retaliatory action even when the employee is contractually obligated to perform under the increased burden. *See Burlington Northern*, 548 U.S. at 69, 126 S.Ct. 2405 (citing *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir.2005)). In *Burlington Northern*, and more explicitly in the Seventh Circuit cases that stem from *Washington*, courts have held that a change in working conditions within an employee's ordinary obligations can be retaliatory when it takes advantage of a "unique vulnerability" that the employee faces. *Thomas v. Potter*, 202 Fed.Appx. 118, 119 (7th Cir.2006) (citing *Washington*, 420 F.3d at 662–63); *see also Ragusa*, 381 Fed.Appx. at 89–90 (holding that the "added challenged" of an increased teaching schedule could be a retaliatory action).

Here, while the Court has found as a matter of law that Villanti was not disabled under the terms of the statute, Villanti nevertheless expressed to the defendants that she experienced pain when put under additional stress and when called on to physically exert herself. In the Court's view, there is at least an issue of fact as to whether this is a "unique vulnerability" that the defendants took advantage of when preparing the plaintiff's teaching schedule. Similarly, the Court finds that the additions to the plaintiff's obligations between 2005–2006 and 2006–2007 are sufficient to raise genuine issues of fact as to whether they were burdensome enough so as to discourage a reasonable person in the plaintiff's condition from pursuing a discrimination complaint.

As for the fourth prong of the prima facie case, causation, the Court is satisfied that the temporal proximity between the plaintiff's protected activity and the alleged retaliatory acts raises a genuine issue of fact as to the causal connection between the protected activity and the alleged retaliation. There is credible evidence that the plaintiff requested certain accommodations in May 2006, and received her class schedule on the last day of school in June 2006. Under Second Circuit law, this is sufficient to raise an issue of fact as to whether the defendants changed the plaintiff's teaching schedule in retaliation for her protected activity. *See Gorman–Bakos v. Cornell Co-op Ext'n of Schenectady Cty.*, 252 F.3d 545, 554–55 (2d Cir.2001) (collecting cases).

### 2. The Non–Discriminatory Reason for the Allegedly Retaliatory Conduct

In the second step of the burden-shifting test, the defendants must state a nondiscriminatory reason for the alleged retaliatory conduct. Here, the defendants

essentially assert that the plaintiff's teaching schedule was prepared pursuant to the school's ordinary practices, and any increase in her teaching burden was incidental to the needs of the school. This response satisfies the defendants' burden of production.

### 3. The Plaintiff's Ultimate Burden of Proof

Once the first two steps of the burden-shifting test have been satisfied, "the *McDonnell Douglas* framework disappears," *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 49 (2d Cir.2002) (internal citations and alterations omitted), and "[t]he plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason [for the allegedly retaliatory conduct] is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir.2006). The plaintiff may do this by presenting additional evidence, or by relying on the evidence that supported the plaintiff's prima facie case. *Sista*, 445 F.3d at 173 (quoting *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir.1999)).

Here, the Court is satisfied that the evidence that supported the plaintiff's prima facie case also raises genuine issues of fact as to whether the defendants' explanation for the plaintiff's change in schedule was pretextual. To be sure, the defendants offer voluminous evidence explaining the non-discriminatory reasons for the schedule that the defendants prepared. If this testimony is credited by a jury, it may preclude the plaintiff's retaliation claim. However, at the present procedural stage, the Court takes all evidence in the best light for the plaintiff. In doing so, the Court finds that the plaintiff has produced sufficient evidence to allow her to proceed to trial on her retaliation claim. There-

fore, except as described directly below, the Court denies the defendants' motion for summary judgment with respect to the plaintiff's retaliation claim under the ADA.

### 4. Claims Against Individual Defendants

■ The plaintiff asserts her ADA retaliation claim against four natural persons. The Second Circuit has recently held that the ADA does not provide for individual liability for retaliation, *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010), and therefore the plaintiff's claim for retaliation asserted against these individual defendants must be dismissed. To the extent that the plaintiff asserts a retaliation claim against the individual defendants in their official capacities, this claims is duplicative of the plaintiff's retaliation claim against the Cold Spring Harbor School District, and also is dismissed. *See, e.g., Tsotesi v. Bd. of Educ.*, 258 F.Supp.2d 336, 338 n. 10 (S.D.N.Y.2003).

### D. As to the Plaintiff's State Law Claims

The defendants request that the Court decline to exercise its supplementary jurisdiction over the plaintiff's state law claims pursuant to New York's Human Rights Law, on grounds that the plaintiff can sustain no valid federal claims. As the Court finds that the plaintiff has established genuine issues of material fact with respect to her retaliation claim under the ADA, the defendants' request is without basis. Therefore, the Court continues to exercise its supplementary jurisdiction over the plaintiff's state law claims, and the defendants' motion in this regard is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment with respect to the plaintiff's discrimination and failure to accommodate claim under the ADA is granted, and this claim is dismissed as to all defendants; and it is further

**ORDERED** that the defendants' motion for summary judgment with respect to the plaintiff's retaliation claim under the ADA against Thomas Dolan, Jay Matuk, Andrea Clouser, and Joseph Monestaro is granted, and this claim is dismissed; and it is further

**ORDERED** that the defendants' motion for summary judgment with respect to the plaintiff's retaliation claim under the ADA against Cold Spring Harbor School District is denied; and it is further

**ORDERED** that the defendants' motion for the Court to decline to exercise supplemental jurisdiction over the plaintiff's state law claims is denied; and it is further

**ORDERED** that the parties are directed to appear before the Court for a pretrial conference on Monday, September 13, 2010 at 9:00 a.m.

**SO ORDERED.**